E-FILED
Monday, 14 June, 2021  04:26:34 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No.: 19-CR-30067 |
| TODD SHEFFLER, WILLIE HEDDEN, and ALEX BANTA | |
| Defendant. | |

## DEFENDANT BANTA'S OBJECTION TO THE COURT'S PROPOSED JURY SELECTION PROCESS THAT SEATS PANELS FROM THE VENIRE BASED ON THE VENIRE MEMBER'S VACCINATION STATUS

Defendant Alex Banta, by his attorneys, files this Objection to the Court's proposed jury selection process that seats panels from the venire based on the venire member's vaccination status.  In support of this Objection, Defendant Alex Banta states as follows:

1.     At the June 11, 2021 status hearing it was disclosed that the Court intends to do jury selection as follows: (a) assemble a venire of potential jurors; (b) determine whether the prospective jurors have received the COVID-19 vaccination; (3) first call from the venire only vaccinated prospective jurors to be examined in the *voir dire* process;

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

Page **1** of **26**

and (4) only if an impaneled jury cannot be had from vaccinated jurors, to then call unvaccinated potential jurors for *voir dire* examination.

2.     While the COVID-19 pandemic has affected court operations and procedures, the Constitution of the United States and federal statutory laws remain in full force and effect. The stated declaration of policy of this Court in the Court's Jury Selection Plan (filed June 1, 2015) implementing 28 U.S.C. §1861 and the Sixth Amendment is that Defendant Banta has a right to have his criminal case decided by a jury selected at random from a fair cross-section of the community in the Springfield Division of this Court.  The Court's stated policy further states pursuant to Section 1861, that "all citizens who reside within the district shall have the opportunity to be considered for service on…petit juries…."

3.     As further discussed in detail below, screening out unvaccinated potential jurors from initial consideration to be impaneled deprives Defendant Banta of his right to a randomly selected "fair cross-section" jury as the effect of the vaccination filter the Court intends to impose means that while the jury venire summoned to Court may be randomly selected from a fair cross-

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

section of the community, the potential jurors from that fair cross-section are, by the Court's intentional act, now very likely will be limited only to vaccinated jurors from that fair cross-section and not randomly selected from the fair cross-section as a whole for possible selection as a juror.  For if unvaccinated potential jurors are not called into the jury box and subjected to *voir dire*, then Defendant Banta is compelled to select his jurors from the Court imposed subset of the cross-section of the community summoned to appear.  As discussed in detail below, the elimination of unvaccinated potential jurors, or even the likelihood that unvaccinated potential jurors won't be called, has the significant effect of eliminating a significant part of the cross-section of the community, for less than half of the population of the counties making up the Springfield Division are fully vaccinated and, in some cases, less than thirty-percent of some of said counties are fully vaccinated.[1]  The Sixth Amendment right to a trial by jury

---

[1] Defendant Banta has a right to challenge an exclusion resulting in a fair cross-section violation even if he is not a constituent of the excluded cross-section. *Duren v. Missouri*, 439 U.S. 357, 359 n.1 (1979)  The same is true for claims based on the federal Jury Selection and Service Act.  *United States v. Musto*, 540 F. Supp. 346, 351 (D. N.J. 1982)  Nor does Defendant Banta have to show prejudice.  *See United States v. Kennedy*, 548 F.2d 608, 612 (5th

unquestionably includes the right to a petit jury drawn from a pool that is a representative cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 537-38 (1975); *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 220 (1946).  The Supreme Court explained that "the broad representative character of the jury should be maintained, partly as assurance of a diffused impartiality and partly because sharing in the administration of justice is a phase of civic responsibility." *Taylor* at 530-31. Thus, Defendant Banta objects to the Court's proposed jury selection process using a vaccination filter.

4.    The principle that a defendant should be tried by a fair cross-section of the community is one of the fundamental principles of our judicial system. Accordingly, the Supreme Court has read into the Sixth Amendment a guarantee that a jury will be composed of a fair cross-section of the community, *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975), and Congress has codified that requirement in the Jury

---

Cir.), cert. denied, 434 U.S. 865, (1977); House Report, 1968 U.S. Code Cong. & Admin. News at 1806 (noting that a committee amendment "eliminates the need to prove prejudice as a condition of judicial intervention when substantial noncompliance with the act is established").

Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1861 *et seq.*

5.     Such a fundamental right should not be lightly cast aside unless the reason for doing so far outweighs the rights of Defendant Banta.   Giving preference to vaccinated venire members is not a compelling reason to dilute Defendant Banta's rights.  Imposing what in effect is a "for cause" exclusion of certain members of the fair cross-section from consideration, clearly and unequivocally implicates the fair cross-section requirement.   Imposing this vaccination filter wrongfully creates a two-tiered fair cross-section requirement in violation of the Sixth Amendment and the Jury Selection and Service Act, as implemented by this Court's Jury Selection Plan.  Moreover, this process is stigmatizing to citizens responding to jury summonses and who seek to do their civic duty, only to find out that they are second class jurors because of their vaccination status.  Certainly, the Court should be concerned that this may impact the jury pool.

Even the National Center for State Courts has recognized that "[e]xcluding persons who are not fully vaccinated may make the jury pool less likely to reflect a fair cross section of the community, which in turn may also increase the risk of jury challenges." *See* the Center's

publication of May 4, 2021, titled *Considerations about Collecting Information on COVID-19 Vaccine Status form Prospective Jurors"*[2]

5.   No statute or court decision or any part of this Court's adopted jury selection plan conditions jury service on a juror being vaccinated against COVID-19 such that unvaccinated potential jurors are to be treated as second class citizens who Defendant Banta has no right to equal access in the jury selection process.

6.   Nothing in 28 U.S.C. §1865(b) governing qualifications for jury service, provides that to be qualified for equal treatment in the selection of jurors that a citizen be vaccinated against COVID-19 or have any other vaccinations such as against influenza, meningitis, measles, or chicken pox, all of which can spread from one person to another.

7.   There is no evidence that not being so vaccinated is a mental or physical infirmity that establishes that a potential juror is incapable of rendering satisfactory jury service under Section 1865. Likewise, nothing in 28 U.S.C. §1863(b)(6) or 1869(i) exempts an

---

[2]

https://www.ncsc.org/__data/assets/pdf_file/0027/64296/COVID-19-Vaccine-Considerations.pdf

unvaccinated citizen from being treated equally for jury service.

8.    By imposing priority seating for *voir dire* only panels comprised of vaccinated members of the jury venire, the Court violates its own Jury Selection Plan (filed June 1, 2015) and 28 U.S.C. §1863(b) in that the potential jurors to be examined for jury service are no longer randomly selected. Rather, the Court has imposed its own arbitrary filter into the selection process.  Therefore, there is a presumption that the Court excluded a cognizable group from the selection process: "[W]hen a statutory violation directly affects the random nature of the selection process, there is no need to show that the violation tended to exclude some cognizable group from that process. *United States v. Kennedy*, 548 F.2d 608, 612 (5th Cir. 1977)

9.    Moreover, Defendant Banta's right to a determination of a fair cross-section jury should not be dependent upon the randomness of where the Court's division boundaries may lie.  The undersigned inquired of the Federal Public Defender Office in Urbana, Illinois, and was advised that no such filtering of panels based on vaccinations have been applied to the jury selection process in their recent jury trials.  We also inquired of a Northern District trial attorney who advised that the Northern District is not filtering

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

Page **7** of **26**

panels based on vaccinations but only testing prospective jurors to make sure they are safe.  This is reflected in the Northern District of Illinois website regarding their use of Shield Illinois testing.[3]

10.   To establish a violation of the fair cross-section requirement, Defendant Banta must show: (a) that the group alleged to be excluded is a 'distinctive' group in the community; (b) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (c) that this under representation is due to systematic exclusion of this group in the jury-selection process. *Johnson v. McCaughtry,* 92 F.3d 585, 590 (7th Cir. 1996) [citing *Duren v. Missouri,* 439 U.S. 357, 364 (1979)] Defendant Banta submits that this test, which applies, the venire selection, is applicable to selection of potential jurors from the venire for *voir dire.*

11.   There can be no doubt that unvaccinated potential jurors, like vaccinated potential jurors would be a distinctive group in the community.  While not distinctive based on visible characteristics

---

[3] https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_clerksoffice/rules/admin/pdf-orders/SHIELD%20Case%20Participants%20FAQ%20FINAL.pdf

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

such as race, gender, or national origin, the distinction, like vaccination status, does not have to be a visible distinction, such as would be the case with religion.

The Supreme Court addressed the test for identifying violations of the fair cross-section requirement, with a focus on the distinctive group requirement, in *Duren v. Missouri*, 439 U.S. 357, 364 (1979)  In *Duren*, the Court stressed that an essential component of the right to an impartial jury is selection of the petit jury from a representative cross-section of the community and that a jury cannot serve its purpose if distinctive groups are left out of the jury pool.

In *United States v. Raszkiewicz*, 169 F.3d 459 (7th Cir. 1999), the Seventh Circuit noted that it would apply the following test to find whether a group is distinctive: (a) existence of qualities that define the group; (b) similarity of attitudes, beliefs, or experiences; and (c) a community of interest among group members.  *Id.* at 463.  But the Seventh Circuit cautioned: "The test is not to be applied mechanically but must be used with common sense in light of the main purposes of the fair cross-section requirement, *viz.* to provide an impartial jury." *Id.*

FeldmanWasser
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

As for the first part of the inquiry, the inquiry about the group's qualities do not have to establish immutable qualities like race, ethnicity, or gender. *Id.* at 463-464   It cannot be doubted that there is a clear existence of a quality that defines the group that the Court intends to relegate to the second level of the *voir dire* process, namely that they are unvaccinated.  This Court itself has determined that it is a distinctive quality as the Court has indicated that this quality will determine the preference for being considered for jury selection.

As for the second and third parts of the inquiry, the Seventh Circuit instructed that "[s]imilarity of attitudes and community of interest are best understood as important examples, among others, of defining qualities rather than as separate and distinct prongs of a test all the elements of which must be satisfied in order to establish group distinctiveness for fair cross-section purposes. *Id.* at 463.   It cannot be doubted that the group that the Court seeks to relegate to the second level of the *voir dire* process exhibit a similar experience, no vaccination, and likely exhibit similar beliefs about vaccinations, or one would think that they would now be vaccinated.

The Seventh Circuit acknowledged that it is difficult to assess the identity of a group when one looks at sociological factors and thus

a court may have to look at the purposes of the fair cross-section requirement, but if, as is the case with vaccinations, the distinctiveness of a group is clearer, the inquiry into purpose has less weight. *Id.* at 466. But even if one looked at the purpose factor, it is clear that the purpose of the fair cross-section requirement to lead to an impartial jury of one's peers is undermined if during the selection process a court intentionally restricts which venire members a defendant can choose from.

Although in *Raszkiewicz* the Seventh Circuit expressed concern that more of a connection must be shown where there is a close question of whether the court is dealing with a distinctive group, for exclusion of a clearly distinctive group creates a presumption of prejudice, *Id.* at 466, in the case at bar we don't have that uncertainty. The fact that the Court is two-tiering the selection process based on the vaccinated status of a member of the summoned venire evidences that there is, in the eyes of the Court, a clearly distinctive group. Further, common sense evidences that there is a clearly distinctive group since the group is identified by a single common characteristic, like religion – here it is their unvaccinated status.

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

12.    Some potential jurors may, in fact, not be getting vaccinated because of their religious beliefs.  Thus, by imposing arbitrarily a vaccination filter, the Court is possibly, and perhaps, likely arbitrarily excluding potential jurors from equal consideration for jury service based their religion.

13.    Some potential jurors may not be getting vaccinated because of an underlying medical condition, which condition does not impair them from being able to serve as a juror but which imposes a greater risk to them if they take the vaccine.  Thus, by imposing arbitrarily a vaccination filter, the Court is possibly, and perhaps, likely arbitrarily excluding potential jurors from equal consideration for jury service based a medical condition that does not impair them from being able to serve as a juror.

14.    A study from the University of Texas A&M conducted from May 28-June 2020, which study appears in the March 2021 issue of the journal *Social Science & Medicine,*[4] found that 31% of queried Americans did not intend to get the vaccine and that the most likely

---

[4]
https://www.sciencedirect.com/science/article/pii/S0277953620308571?via%3Dihub#bib1

FeldmanWasser
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705

217/544-3403

groups to reject the vaccine are African-Americans, women, and those with conservative political leanings.[5]

15.    Regarding the political leaning, the Introduction to the study reports:

> Prior research suggests that conservatives are less likely to trust medical and scientific experts (e.g., Motta 2018), and – perhaps consequently – are more likely to think that vaccines are unsafe (Joslyn and Sylvester 2019; Baumgaertner et al., 2018). Conservatives are also less likely to believe that the COVID-19 pandemic poses a serious public health threat (Tyson 2020), potentially due to messaging from President Trump suggesting otherwise (Summers 2020), which could undermine the perceived necessity of vaccinating.

The Court's preference for vaccinated jurors raises the issue that potential jurors who may have certain biases in favor of the Government are given preference to potential jurors who may have biases against the Government.  One only need to have followed the mask and vaccination debates and news over the last five months to see that it is a reasonable inference that persons who don't wear masks or don't get vaccinations are likely distrustful of the Government, while those who do wear masks and get vaccinations

---

[5] https://www.medicalnewstoday.com/articles/which-us-demographics-are-more-likely-to-refuse-a-covid-19-vaccine

evidence that that they are trustful of the Government.   It is grossly unfair to Defendant Banta to put a thumb on the scale in the jury selection process that eliminates as preferential potential jurors, those persons who may be distrustful of the Government. Of course, the only fair way to determine this for the defense and the Government is to seat potential jurors randomly selected and to subject them to *voir dire.*

16.    The Texas A&M study also reported that vaccine hesitancy, "defined as the decision to delay vaccination or the refusal to vaccinate despite available vaccination services," is growing increasingly common in the U.S. public [source citation omitted]." This vaccine hesitancy is reflected in the statistics maintained by the Illinois Department of Public Health ("IDPH") discussed in the next paragraph of this Objection.  Again, this demonstrates the significant problem of preventing Defendant Banta from being able to select a jury from a fair cross-section of the community for unvaccinated persons, as the IDPH statistics demonstrate, make up presently a substantial portion of the population of the counties from which the venire is to be drawn.

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

17.    Screening and giving priority to vaccinated jurors such that the jury impaneled only comes from vaccinated jurors will not result in a randomly selected fair cross-section of the community.  The Court is referred to the present statistics maintained by the Illinois Department of Public Health as to the percentage of the population, by county, that are vaccinated. This data can be found at:

> https:"www.dph.illinois.gov/covid19/vaccinedata?county=Illinois#CountyVaccineDetails

18.    This IDPH website sets out an Illinois state map showing all counties and when you hover the mouse over a county it gives you the percent of the population of that county that is fully vaccinated. **Attachment 1** to this Objection is a table that summarizes that data for the counties in the Central District of Illinois Springfield Division. No county in the applicable community has even a 50% vaccination rate and some counties have less than 30% (assuming all persons counted were otherwise eligible for jury service).  What this means is that if only vaccinated potential jurors are the initial jury pool from which the jury panel is to be selected, at least, if not more than half of the potential jurors who reside in the District would be excluded from the *voir dire* process.  Then it would only be happenstance that

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

Page **15** of **26**

the unvaccinated jurors who make up more than half of the District's venire jury pool could be examined and selected for using the vaccination filter, these potential jurors may never be "put in the box" for possible selection.

19.   If the selection of the venire is truly random, then on average the membership of the randomly selected venire will be the same as the relative populations of their respective counties. In a random selection process without the Court's ordering, each member of the venire has the same probability of being selected for consideration of being impaneled. A randomly chosen member from County A has the same probability of being selected for consideration as a randomly selected member from County B.  Under normal rules, each member of the venire then has the same chance of consideration of being impaneled. However, once the Court's vaccination filter is imposed, the probability of selecting a member from a given county depends on the likelihood that they are vaccinated, which roughly corresponds to the vaccination rate in that county. Because there is substantial variation in vaccination rates across counties, members from different counties will, on average, no longer be selected for consideration with the same probability. The probability of choosing

FeldmanWasser
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

Page **16** of **26**

a vaccinated member from a county with a low vaccination rate is lower than the probability of choosing a vaccinated member from a county with a high vaccination rate. Thus, once the Court imposes the vaccination filter then the number of venire members from one county is effectively diluted and no longer proportional to their population. So, there is no longer a jury that would be selected from a random fair cross-selection of the community.

Here is an example: Suppose schoolchildren who are selected to eat lunch at 11:00 a.m. must form a line in order to be served their lunch. Now suppose that there are 10 children in line but there are only 5 lunch servings available. Which children receive lunch will depend on the order in which they randomly form a line. If they are required to line up from shortest to tallest, then the distribution of heights among the children who get lunch will not be the same as the overall distribution of heights of the school as a whole.

Here is another example: The percentage of Muslims from the various county populations is randomly determined simply by the population. But once the Court says Muslims go second, then it would be possible to select a jury without ever even considering a

FeldmanWasser
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

Page **17** of **26**

Muslim, provided there were sufficiently many non-Muslim members of the venire.

So, it goes with vaccinated and unvaccinated venire members. They become members of the venire on average in proportion to the populations of the counties from which they are randomly summoned. But now at the courthouse, if the Court imposes a vaccination filter, when looking at the IDPH statistics, it is self-evident that there will now be significant dilution of the venire members from those counties that don't have the higher populations for the IDPH statistics show significantly lower full vaccination rates.

What this means for Defendant Banta is that he no longer has a right to have his jury selected from a random fair cross-section of the community, or at minimum that right is seriously impaired, for if for-cause strikes don't dilute the vaccinated venire members called into the box, and if he runs out of preemptory strikes while there are still vaccinated venire members in the box, then Defendant Banta never will have the chance to have a randomly selected unvaccinated venire member for consideration, for the Court's vaccine filter will have precluded him that opportunity.

20.   The third part of the fair cross-section test is also met for the Court's plan to intentionally only examine vaccinated potential jurors before examining vaccinated jurors creates under representation "due to systematic exclusion of this group in the jury-selection process".  The Supreme Court in *Duren*, 439 U.S. at 366 has stated that underrepresentation is "systematic" if it was an "inherent" product of the jury mechanism that the court used or if it was caused by a rule or practice that a state actor controlled.  The Court had indicated that it has applied this vaccine filter on at least one prior occasion and intends to use the vaccine filter in this case.  The systematic exclusion prong is thus satisfied as it is the product of the Court's jury mechanism.

21.   Another valid consideration is that potential jurors don't get vaccines because of economic reasons:  they don't have insurance coverage to pay for the vaccine or the administration fee for giving the shot; or they can't take time off of work to get the vaccine.  Again, by arbitrarily imposing a vaccine filter deprives Defendant Banta from being able to select a jury whose fair cross-section is now diluted based upon socio-economics.  Moreover, this would indicate that 28

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

Page **19** of **26**

U.S.C. §1862 would be violated for it unlawfully excludes a petit juror on the basis of "economic status".[6]

22.    According to the demographic data reported on the CDC website,[7] and assuming some parallel between Illinois demographics and the reported national demographics, the persons who are fully vaccinated are overwhelmingly white/non-Hispanic and mostly of older age.  So again, arbitrarily imposing a vaccination filter on impaneling a jury deprives Defendant Banta of the opportunity to

---

[6] In *Smith v. Berghuis*, 543 F.3d 326, 341–42 (6th Cir. 2008), rev'd, 559 U.S. 314 (2010), the Sixth Circuit Court of Appeals held that because the "particular jury selection process employed . . . made social or economic factors relevant to whether a[] . . . juror would be excused from service; and because . . . [such] factors disproportionately impact African Americans," the process employed constituted systematic exclusion sufficient to satisfy the third prong of the fair cross-section test. The Sixth Circuit explained that "the Sixth Amendment is concerned with social or economic factors when the particular system of selecting jurors makes such factors relevant to who is placed on the qualifying list and who is ultimately called to or excused from service." *Id.* at 341 When the U.S. Supreme Court reversed the Sixth Circuit's ruling, holding that the defendant's fair cross-section claim did not constitute a violation of clearly established federal law, the Supreme Court declined to decide whether socioeconomic factors could constitute systematic exclusion.

[7] https://covid.cdc.gov/covid-data-tracker/#vaccination-demographic

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705

217/544-3403

have potential jurors who are not white/non-Hispanic and who are younger from being selected for his jury.

23.    A recent NPR/Marist poll[8] found that one in four Americans said they would refuse a coronavirus vaccine outright if offered. Another 5% are "undecided" about whether they would get the shot. Although the numbers were highest for Republican men and residents of rural areas, there were still a significant number of people across all ages and demographic groups who claim they will say "no." Again, this demonstrates that imposing a vaccination filter arbitrarily dilutes the potential jury pool from which Defendant Banta is to select the jurors for his trial.

24.    The Government in *U.S. v. Berrios* (d/e #53) argued that the Court can on its own determine that an unvaccinated person's risk of contracting COVID-10 as a result of jury service constitutes an "undue hardship" thus allowing vaccination screening.   But this exemption is clearly stated to be a finding of "undue hardship…to the juror", 28 U.S.C. §1866(c)(1)  The Court, without any scientific basis,

---

[8] http://maristpoll.marist.edu/npr-pbs-newshour-marist-poll-results-the-biden-administration-covid-19/#sthash.ercWmMhR.dpbs [see pages 25-26 of 32]

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

and without any request from a potential juror seeking to show that he/she has an undue hardship, would arbitrarily be deciding that there is an "undue hardship", the effect of which, as discussed above, unfairly dilutes the jury pool from which Defendant Banta should be able to pick a jury.   Also, to be non-arbitrary, if this were a legitimate reason, then during flu season the Court should screen out venire members who didn't take the flu vaccine, or at all times the Court should screen out all "anti-vaxxers".  But the Court does not do this.

25.   The Government in *U.S. v. Berrios* (d/e #53) also argued that the Court can exclude a prospective juror under Section 1866(c)(2) on the grounds that "service as a juror would be likely to disrupt the proceedings".  Again, this invites the Court to arbitrarily draw the conclusion that an unvaccinated person's risk of transmitting the virus is "likely to disrupt the proceedings".  This is pure speculation by the Government and is outweighed by Defendant Banta's fundamental constitutional right to have a jury come from a fair cross-section of the community.

26.   The proper way to address the Government's concerns is to randomly select venire members and put them in the jury box and

subject them to *voir dire* that has COVID-19 based questions, such as the ones suggested by Defendant Banta.

27.   While Defendant Banta acknowledges that he is not entitled to a jury of any particular composition, he is, however, entitled to a fair process that generates an impartial jury. *United States v. Raszkiweicz*, 169 F.3d 459, 462 (7th Cir. 1999); *United States v. Duff*, 76 F.3d 122, 125 (7th Cir. 1996)  The Court's intended process of prioritizing vaccinated venire members for jury selection is not, for the reasons stated in this Opposition, a fair process.  As noted in *Lockhart v McCree,* 476. U.S. 162, 175 (1986), "the exclusion [of certain groups] raised at least the possibility that the composition of juries would be arbitrarily skewed in such a way as to deny criminal defendants the benefit of the common-sense judgment of the community,..."  That is the wrongful effect of the Court's vaccination filtering process.

Wherefore, for all of the foregoing reasons, Defendant ALEX BANTA objects to the process that the Court has indicated that it will follow for jury selection, being to first seek to impanel a jury from prospective jurors who are vaccinated before considering prospective jurors that are not vaccinated.

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

Page **23** of **26**

ALEX BANTA, Defendant,

By: _/s/Stanley N. Wasser _____
    Stanley N. Wasser, #2947307
    One of His Attorneys
    FeldmanWasser
    1307 South Seventh Street
    Springfield, IL 62703
    217-544-3403
    swasser@feldman-wasser.com

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705

217/544-3403

Page **24** of **26**

**Attachment 1**

## COVID VACCINATION RATES BY COUNTY 6/12/21

| | | | |
|---|---|---|---|
| Adams | 38.68% | Mason | 37.85% |
| Brown | 38.76% | Menard | 40.12% |
| Cass | 39.49% | Montgomery | 35.64% |
| Christian | 31.56% | Morgan | 37.86% |
| DeWitt | 34.75% | Pike | 27.80% |
| Greene | 28.08% | Sangamon | 45.51% |
| Logan | 38.35% | Scott | 28.87% |
| Macoupin | 37.26% | Shelby | 27.32% |

https://www.dph.illinois.gov/covid19/vaccinedata?county=Illinois#CountyVaccineDetails

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 14, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Timothy A Bass          tim.bass@usdoj.gov

William L Vig           bill@vig-law.com

Mark Wycoff             mark@wycofflaw.com

James Elmore            elmoreandreid@sbcglobal.net

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Not Applicable

By: /s/Stanley N. Wasser _____
Stanley N. Wasser, #2947307
One of His Attorneys
FeldmanWasser
1307 South Seventh Street
Springfield, IL 62703
217-544-3403
swasser@feldman-wasser.com

**FeldmanWasser**
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

Page **26** of 26