IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-30067 |
| | ) | |
| TODD SHEFFLER, | ) | |
| WILLIE HEDDEN, and | ) | |
| ALEX BANTA, | ) | |
| | ) | |
| Defendants. | ) | |

# OPINION

**SUE E. MYERSCOUGH, United States District Judge:**

Before the Court is Defendant Alex Banta's Motion in Limine No. 2 [d/e 80].

The Defendant seeks entry of an order restricting the Government from introducing certain testimony and photographs. Defendant Todd Sheffler has adopted portions of this motion as his own.

<u>Non-Disclosed Opinion Witnesses-Causation</u>

Defendants Banta and Sheffler seek to bar all correctional officer or correctional center medical staff witnesses from offering any

1

opinion testimony at trial, including any opinion testimony about what caused Larry Earvin to be injured or what caused Mr. Earvin's death. The Government did not disclose any correctional officers or correctional center medical staff as expert witnesses, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G).

As the Government notes, Federal Rule of Evidence 701 permits a lay witness to offer opinion testimony that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The Government states that the admissibility of such testimony should be determined at trial.

Because lay witness testimony is permissible in certain circumstances, the Court deferred ruling on the admissibility of non-disclosed opinion testimony as to causation until and unless such testimony is presented in Court.

### Non-Disclosed Opinion Witnesses- Use of Force

For the same reason noted in the previous paragraph, Banta and Sheffler seek to bar all correctional officer or correctional center medical staff witnesses from offering any opinion evidence at trial

2

about whether any force they personally observed occurring between Defendants and Mr. Earvin: (1) was or was not excessive or (2) was or was not reasonable or unreasonable.

To the extent facts are presented to the jury about what witnesses saw or heard regarding any physical contact between the Defendants and Mr. Earvin, jurors can use their common sense and perception, consistent with the jury instructions to determine whether the physical contact constituted a use of force and, if so, whether that force was or was not excessive or unreasonable. The Defendants claim that, if a witness testifies about what he or she observed about the type, manner and/or frequency of any physical contact Defendants Banta or Sheffler may have made with Mr. Earvin, the jury would have a clear understanding of the witness's testimony and there would be no need to have the witness inject his or her own personal opinion as to whether the witness observed excessive or unreasonable force. Moreover, the jury will be instructed as to what constitutes reasonable force under the civil rights law and United States Constitution.

The Court noted there is a concern with lay witnesses using legal terms such as "excessive force" or "unreasonable force." As with

causation, the Court deferred ruling on the admissibility of non-disclosed opinion testimony regarding use of force until and unless such testimony is presented at trial.

Subjective Belief Testimony

Defendants Banta and Sheffler seek to bar any correctional officer or correctional center medical staff witnesses from offering any testimony about what they believe may have occurred in the vestibule area leading to the correctional facility segregation unit where the alleged incident involving Mr. Earvin is alleged to have occurred. Any such testimony should be confined to what each claim to have actually witnessed or heard.

The Defendants cite two examples of the type of testimony they seek to exclude. Correctional Officer Burnett was not in the segregation unit and had no knowledge about what happened, but thinks Defendant Banta "got in there somewhere and did his thing too" – referring to the beating of Mr. Earvin—before adding, "That's just my personal opinion." Burnett also made the statement he thinks Banta would be involved because "he wants to fit in" and to be "known as 'that guy.'"

Correctional Officer Haubrich stated that he saw the three Defendants kind of drive Mr. Earvin into the locked inner door and throw him to the ground in the segregation vestibule. He stated he did not see the "push" but believes this to be the case because he heard a "thud."

Under Federal Rule of Evidence 602, a witness may testify about a matter only if he or she has personal knowledge of the matter. The rule does not address the personal beliefs of what a witness thinks may have happened.

The Court noted that personal opinions without foundation should not be elicited and deferred ruling on the admissibility of subjective belief testimony until trial.

### Ruble Testimony Regarding Time in Vestibule

Defendants Banta and Sheffler seek to bar Correctional Officer Richard Ruble, who was not disclosed as an opinion witness, from testifying about whether the amount of time that he saw any of the Defendants in the vestibule leading to the segregation unit, was or was not an unusual amount of time. Ruble stated that it "appeared to be an unusual amount of time." The Defendants claim this is a statement of personal belief which is not relevant. A jury can make

its own determination about whether evidence of the amount of time that elapsed for the incident was or was not unusual. Rule 701(b) provides that lay opinion testimony may be presented to help a jury to clearly determine a fact in issue. The Defendants claim that although the amount of time spent in the vestibule may be a fact to be determined, whether that amount of time was unusual is not such a fact.

The Court deferred ruling until trial on the admissibility of testimony regarding opinions about the amount of time in the vestibule.

## Hasten Opinion Testimony Regarding Banta Kicking or Stomping Earvin

Defendants Banta and Sheffler seek an order barring Correctional Officer Derek Hasten from testifying that Banta was kicking or stomping Mr. Earvin. Hasten stated "it appeared" that "everyone in the group was participating," meaning all three Defendants. Hasten did not say that he knew Banta did this. In sworn interrogatories directed to him in the civil case—People v. Hedden, Case No. 19-cv-3010-SEM-TSH, which are attached to the instant motion, Hasten stated that while he observed staff in the

vestibule stomp and kick towards the ground, he did not see any staff make contact with Mr. Earvin because Earvin was outside of Hasten's line of sight. Accordingly, the Defendants allege Hasten's testimony would be impermissible opinion testimony of a lay witness who has not been disclosed as an expert.

The Court deferred ruling on the admissibility of this testimony until trial.

## Hasten Testimony Regarding Banta jumping up and Landing on Earvin

Defendants Banta and Sheffler seek an order barring Correctional Officer Hasten from testifying that Banta jumped up and landed on Mr. Earvin or his belief that this happened, given that Hasten's statement to the Federal Bureau of Investigation was that he never saw anyone jumping up and landing on Mr. Earvin.

The Court noted there has to be foundation for such testimony and deferred ruling on the admissibility of this testimony until trial.

## Burnett Opinion Testimony

Defendants Banta and Sheffler seek an order barring Correctional Officer Benjamin Burnett from testifying that Banta and Sheffler got involved with the beating of Mr. Earvin and from

7

testifying that "Banta did his thing too" or any other words to that effect, for Burnett stated that he did not go to the segregation unit where the beating is alleged to have occurred and this was "just my personal opinion." In his answer to Complaint allegation number 17 in the civil suit filed against Burnett and others—<u>Pippon v. Hedden</u>, *et al.*, Case No. 19-cv-3010-SEM-TSH, Burnett denied being in the segregation unit and stated that he did not observe anyone beating or attacking Earvin. <u>See</u> Burnett Answer, d/e 90, at 8-9 in <u>Pippon</u>.

The Court reiterated that there must be foundation for such testimony in order to be admissible. The Court deferred ruling on the admissibility of this testimony until trial.

## Lindsey Testimony About Banta/Sheffler Driving Their Knees Into Earvin's Chest

Defendants Banta and Sheffler seek an order barring Correctional Officer Matthew Lindsey from testifying that they drove their knees into the chest of Mr. Earvin, given that Lindsey stated "he did not personally see" anyone driving their knee into Earvin's chest and that he did not "actually see" Banta or Sheffler kneel down.

A ruling on the admissibility of this testimony is also deferred until trial.

## Prison Rape Elimination Act

Defendants Banta and Sheffler seek an order redacting certain information depicted on photographs disclosed by the Government. The photos are of the segregation unit vestibule which depict a concrete block wall with the words "PREA HOTLINE 217-558-4013" stenciled on the wall. A copy of the photo is included as an exhibit to the motion. The stencil refers to the Prison Rape Elimination Act, 42 U.S.C. § 15601 *et seq.*, and gives the hotline for inmates to call as required by statute. The stencil has no relevance and is not material to any issue. Its presence in the photographs could lead to the jury asking questions about the stencil. The stencil has no relevance and, even if it did, the danger of unfair prejudice of interjecting prison rape requires the exclusion of the evidence under Federal Rule of Evidence 403. Accordingly, any such photographs used by the Government should have the stencil redacted.

The Government agrees that the stencil and any reference to it are not relevant and material to any issue. However, placing a black box over the stencil or otherwise redacting it will only draw attention to the issue and possibly prompt questions from the jury. The Government states that, if a juror asks questions about the stencil,

the Court can simply instruct them that it is not relevant to any issue in the case and should not be considered in any way.

At the hearing, the Defendants agreed with the Government's position about unnecessarily drawing attention to the issue. Accordingly, the Defendants no longer seek this relief.

### Testimony That Banta May Use Steroids

Defendant Banta seeks to exclude testimony that he may have used steroids. Officer Ruble has stated there are rumors that Defendants Hedden and Banta, who lift weights, may be using steroids. Testimony based on rumors is inadmissible as it is not based on personal knowledge.

The Government states it does not intend to introduce in its case-in-chief any evidence that Banta may have used steroids. It reserves the right to offer such evidence during cross-examination of any defense witness, including the Defendants, if the evidence is appropriate for impeachment, or in rebuttal, if Defendant opens the door to the admission of such evidence.

Accordingly, the motion is granted as to the exclusion of this testimony for purposes of the Government's case-in-chief.

### Other Lawsuits In Which Banta Is Named As A Defendant

Defendant Banta has been named as a Defendant in other lawsuits filed by inmates. Banta claims such evidence should be excluded under Federal Rule of Evidence 404(b) and/or Federal Rule of Evidence 403.

The Government states that it does not intend to introduce such evidence during its case-in-chief. The Government reserves the right to offer such evidence under the same circumstances noted above. Accordingly, the motion is granted as to the exclusion of this evidence for purposes of the Government's case-in-chief.

Statements About Banta's And Sheffler's Character

Defendants Banta and Sheffler state that, according to the Government's disclosures, several correctional officers have made statements about their character or character traits that are either not based on personal knowledge or that constitute improper character evidence.

Federal Rule of Evidence 404(a)(1) prohibits the use of an individual's character or character traits to prove that on the occasion in question the individual acted in accordance with the character and trait.

The Government states that it does not intend to introduce such evidence during its case-in-chief. The Government reserves the right to offer such evidence under the same circumstances noted above. Accordingly, the motion is granted as to the exclusion of this testimony for purposes of the Government's case-in-chief.

### Evidence Of A Code of Silence/Blue Wall/Propensity To Lie And Cover Up

Defendant Banta states that the Government's disclosures show that certain correctional officers, other than Banta, made statements that they did not intervene to stop the alleged assault on Mr. Earvin and/or failed to report the incident. This suggests the Government believes there was a cover-up. In fact, Count 3 alleges Defendants Sheffler, Hedden and Banta conspired to engage in misleading conduct by falsely reporting about their interactions with Mr. Earvin. Banta claims this testimony is inadmissible and should be excluded. Specifically, the Government should be barred from using the terms "blue wall," "code of silence" or any other similar terms and should be precluded from introducing evidence that law enforcement or correctional officers generally or typically adhere to a

"code of silence" or seek to cover up misconduct to protect fellow officers.

The Government states that it does not intend to introduce evidence of a general code of silence not involving Defendants or a cover-up regarding any other incident. Because Defendants are charged with conspiring to engage in misleading conduct to cover-up their alleged crime, however, the Government states it must be permitted to offer evidence related to Defendants' alleged conspiracy, which may accurately be described as a "code of silence" followed by these correctional officers. Additionally, evidence of a cover-up among Defendants could be admissible as evidence of bias based on their loyalty to one another.

The Defendants' motion was directed at a general code of silence, not a code of silence related to the alleged conspiracy in this case. Accordingly, this issue has been resolved. The motion is granted as to any general code of silence or "blue wall."

## Autopsy And Hospital Photographs

Based on Federal Rule of Evidence 403, Defendants Banta and Sheffler seek an order excluding the admission of numerous autopsy photos of Mr. Earvin and his body parts in addition to photos of

Earvin while he was in the hospital. Because Defendants will not be taking issue with anything reported in the autopsy report, nor the fact of Mr. Earvin's death, nor the condition of Earvin while he was in the hospital, nor the treatment that he received, Defendants contend the admission of that evidence will be so inflammatory and will create the danger of unfair prejudice which outweighs any probative value and will potentially distract the jury from a fair and unimpassioned consideration of the evidence.

The Government notes it will be required to prove that the victim was injured and died as a result of the Defendants' conspiracy against civil rights and the Defendants' deprivation of the victim's right to be free from cruel and unusual punishment. See Pattern Criminal Jury Instructions of the Seventh Circuit (2020 ed.) at 205-06, 18 U.S.C. § 241, Death.

The issue of whether the Defendants' conduct resulted in the victim's death is disputed by the parties. The Government notes that Defendant Sheffler has disclosed an expert witness regarding the manner and cause of death. The Government experts, Dr. Norfleet and Dr. Collier, are expected to testify regarding the victim's injuries and cause of death and will need to refer to the autopsy and hospital

photographs to explain their testimony to the jurors. The Government further claims that the particular injuries are highly probative of whether the force used against the victim was "for the purpose of harming the prisoner" or a "good faith effort to maintain or restore security or order." See Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.) No. 7.18, Eighth Amendment: Excessive Force Against Convicted Prisoners – Elements.

For these reasons, the Government claims that the autopsy and hospital photographs of the victim's injuries allegedly caused by Defendants are highly probative and not unfairly prejudicial. The Government states it does not intend to introduce autopsy photographs that do not help explain the testimony of its experts or do not relate to the Defendants' alleged use of excessive force. Counsel for the Government is consulting with its expert witnesses regarding which photos are necessary to explain their testimony. Government counsel will advise Defense counsel which photos will be used. The Defendants can then make any objections to the photographs.

Accordingly, the Court will defer ruling on this issue until and unless objections are made to the photos the Government intends to use in questioning its expert witnesses.

Unrelated Allegations of Officer Misconduct, Including Excess Force

Based on Federal Rule of Evidence 403, Defendants Banta and Sheffler seek an order excluding any argument, evidence, testimony or inference about any officer misconduct, including the use of excessive force, unrelated to the events of May 17, 2018. The motion does not seek to preclude any party from raising the subject of police misconduct or use of force during *voir dire*.

The Defendants believe the Government will seek to establish that officer misconduct involving excessive force at the facility was not limited to the events involving Mr. Earvin and that it was known no cameras existed in the segregation vestibule area. Because Government disclosures show no evidence that Defendants Banta and Sheffler engaged in or are alleged to have engaged in the use of excessive force against inmates, including Mr. Earvin, Defendants allege the probative value of such evidence is substantially outweighed by the danger of unfair prejudice.

The Government does not intend to present such evidence during its case-in-chief. The Government will seek leave of Court before offering it for other purposes such as such as through character evidence or impeachment. Accordingly, the Court will defer ruling on the admissibility of such evidence until and unless the Government seeks to introduce it.

## **CONCLUSION**

For the foregoing reasons, the Defendant's Motion in Limine No. 2 [d/e 80] is GRANTED in part and DEFERRED in part as to certain issues, as provided in this Order.

The issue regarding the "PREA Hotline" has been resolved and the Defendants have withdrawn that portion of the motion.

ENTER: June 30, 2021

/s/ *Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
