**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-30067** |
| | ) | |
| **TODD SHEFFLER,** | ) | |
| **WILLIE HEDDEN, and** | ) | |
| **ALEX BANTA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, United States District Judge:**

Before the Court is Defendant Alex Banta's Motion in Limine No. 2-1.

Also pending is Defendant Banta's Motion in Limine No. 2-2.

Defendant Todd Sheffler has adopted both motions.

In Motion in Limine No. 2-1, Defendants Alex Banta and Todd Sheffler seek entry of an Order precluding the Government from using or placing into evidence at the trial 26 autopsy photographs that were disclosed by the Government to Defendants. The photographs are part of the autopsy photographs that are on a disc

and were filed under seal.  In discussing an issue with hospital and autopsy photographs that was raised in the  Defendants' Motion in Limine No. 2, the Court stated:

> Counsel for the Government is consulting with its expert witnesses regarding which photos are necessary to explain their testimony.  Government counsel will advise Defense counsel which photos will be used.  The Defendants can then make any objections to the photographs.

D/E 80, at 15.  The Defendants now object to introduction of those 26 autopsy photographs.

In Motion in Limine No. 2-2, the Defendants seek the exclusion of the one hospital photograph that the Government intends to introduce at trial.

## **Background**

Defendants Sheffler and Banta, along with Willie Hedden, were charged in a ten-count indictment with conspiracy to deprive civil rights, deprivation of civil rights, conspiracy to engage in misleading conduct, obstruction-falsification of document and obstruction-misleading conduct.

The indictment alleges that as part of the conspiracy to deprive and deprivation of the rights of Larry Earvin, an inmate at the Western Illinois Correctional Center (WICC), and during their

participation in the forcible escort of Mr. Earvin from his residential housing unit to the segregation housing unit on May 17, 2018, Sheffler, Hedden and Banta assaulted Mr. Earvin without legal justification while he was restrained and handcuffed behind his back and while he posed no threat to the Defendants or anyone else. The indictment further alleges that Sheffler, the lieutenant and most senior officer, also willfully failed to intervene and to protect Mr. Earvin from being assaulted by two subordinate officers, despite having the opportunity to do so, and that Hedden, the sergeant and senior officer to Banta, willfully failed to intervene to protect Mr. Earvin from being assaulted by a subordinate officer, despite having the opportunity to do so. The indictment alleges that the assault resulted in bodily injury to Mr. Earvin, including multiple broken ribs and other serious internal injuries, and further resulted in Mr. Earvin's death. If the Defendants are convicted on the conspiracy to deprive or deprivation of civil rights charges, the jury will be required to answer special questions regarding whether Larry Earvin sustained bodily injury or died as a result of the charged conspiracy; whether he suffered bodily injury as a result of the Defendants' acts; and whether the conduct of the Defendants contributed to or

hastened Larry Earvin's death, even if that conduct by itself would not have caused his death.

Defendant Hedden has pleaded guilty to certain charges in the indictment and agreed to testify at the trial of Defendants Sheffler and Banta.  The Government states that Hedden and other WICC officer/employee witnesses are expected to testify that the assault of Mr. Earvin that caused his multiple, severe injuries resulting in bodily injury and death occurred at the entrance of the segregation unit at WICC, after Sheffler had joined the escort of Mr. Earvin with Hedden and Banta.  The Government further states that Hedden and other witnesses are expected to testify that the assault included Banta jumping and landing on Mr. Earvin's torso with his knees and the Defendants punching, kicking and stomping on Mr. Earvin, resulting in multiple external and internal injuries, and Mr. Earvin's eventual death.

## Expected Medical Testimony

The Government states that its experts, Patrick Collier, M.D., a Trauma Surgeon, and Gershom Norfleet, M.D. a Forensic Pathologist, are expected to testify regarding the inmate's injuries and cause of

death and will need to refer to the autopsy and hospital photographs to explain their testimony to the jurors.

Dr. Norfleet, who performed the autopsy, identified the injuries that Mr. Earvin sustained, including multiple areas of significant external and internal trauma, and concluded that Mr. Earvin's death resulted from complications of blunt thoracoabdominal trauma.

The Government states that both experts will testify to the contents of Mr. Earvin's medical records, the injuries (external and internal) he sustained (including head trauma), the cause of and/or contributing factors to his death, the types of trauma that are likely to have caused his injuries (including being punched, kicked, jumped on, stomped on, etc.), the likelihood or certainty that the more serious types of trauma (kicking, jumping on, stomping on, etc.) are the causes of Mr. Earvin's internal injuries and contributed to or caused his death, rather than the result of mere punching, and to the likelihood that Mr. Earvin was suffering from these internal injuries prior to his arrival at the segregation unit while being escorted by Defendants Banta, Sheffler and Hedden.

## **Autopsy and Hospital Photographs**

The Government states that, as part of Dr. Collier's testimony, and to assist with the testimony concerning Mr. Earvin's injuries and condition, the Government will introduce one photograph of Mr. Earvin following surgery.   The photograph depicts Mr. Earvin's condition and confirms that his condition was so critical that he needed to be intubated, his neck stabilized, and blood provided due to the loss of blood from internal bleeding.

The Government states it intends to introduce certain (not all) autopsy photographs, depicting Mr. Earvin's external injuries, broken ribs, sternum, and shoulder, and the multiple areas where he suffered substantial internal trauma and bleeding.  The Government claims the photos are highly probative and critical evidence which will corroborate the testimony of the medical experts and provide a clearer picture of Mr. Earvin's injuries, the cause of his death, the viciousness of the offense, and the Defendants' malice aforethought.

Defendants Banta and Sheffler contend that the Government should be barred from introducing the 26 photographs for a number of reasons: (1) the autopsy photos are not needed to establish that the inmate died or the inmate's identity; (2) the autopsy photos do

not prove anything about who caused the injuries to or death of the inmate, where in the prison facility it happened, what kind of trauma caused the injuries, or the degree or force of the trauma that caused the observed injuries; (3) the Defendants are not taking issue with the condition of Mr. Earvin while he was in various hospitals (Culbertson, St. John's and St. Mary's) and at Centralia Correctional Center, and there is no need to show photos of Mr. Earvin on the autopsy table with a tracheal apparatus attached to his neck; (4) autopsy photographs 1, 2, 3, 4, 5 and 7 are unnecessarily duplicative of other photographs taken of Mr. Earvin in the WICC segregation unit while he was alive and which the Government will seek to introduce at trial; (5) the Government has and can obtain medical graphics which can be used in connection with a testifying physician to demonstrate the location of the injuries, thereby eliminating any need for the use of autopsy photos; (6) no autopsy photos are needed to assist the jury in understanding Dr. Collier if he testifies that he agrees with Dr. Norfleet's autopsy report, based on the conditions Dr. Collier observed when he treated Mr. Earvin; (7) there is no need for autopsy photos during Dr. Collier's testimony if Dr. Collier does not testify he agrees with Dr. Norfleet's conclusion; and (8) Dr. Norfleet

7

can simply use medical graphics and point to parts of the body when explaining to the jury what he is referencing in his autopsy report.

The Defendants claim the hospital photograph is also unnecessary and should be barred for similar reasons.

The Defendants further contend that, even if the autopsy photographs and hospital photograph have some minimal relevance, their admission into evidence will be so inflammatory and create the danger of unfair prejudice and detract the jury from a fair and dispassionate consideration of the evidence.  The Defendants allege the photos should be excluded under Federal Rule of Evidence 403.

### Analysis

Evidence is relevant if it has "some tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  United States v. Liporace, 133 F.3d 541, 544 (7th Cir. 1998) (internal quotation marks and citation omitted).  Relevant evidence is generally admissible, except when it is otherwise excluded by law or rule.  Fed. R. Evid. 402.  Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[M]ost relevant evidence is, by its very nature, prejudicial, and that evidence must be unfairly prejudicial to be excluded." United States v. Neeley, 189 F.3d 670, 682 (7th Cir. 1999). "Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." United States v. Pulido, 69 F.3d 192, 201 (7th Cir. 1995). When determining admissibility under Rule 403, courts use a "sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice." Whitehead v. Bond, 680 F.3d 919, 930 (7th Cir. 2012).

"Autopsy photographs can have immense probative value, if for example they confirm the prosecution's theory about the manner in which the crime was committed." United States v. Rezaq, 134 F.3d 1121, 1138 (D.C. Cir. 1998). Autopsy photographs can assist the jury in understanding the testimony of the medical examiner and provide a clearer picture of the victim's injuries, his cause of death, the viciousness of the offense, and the defendant's malice aforethought. See e.g., United States v. Soundingsides, 820 F.2d

1232, 1242-43 (10th Cir. 1987) (upholding admission of "undeniably gruesome" autopsy photographs that painted a clearer picture of the victim's injuries, cause of her death, and the defendant's malice aforethought); United States v. Sarracino, 340 F.3d 1148, 1169 (10th Cir. 2003) ("Without these photos, the prosecution would have been handicapped in its ability to convey the nature and extent of the beating to the jurors."); United States v. Treas-Wilson, 3 F.3d 1406, 1410 (10th Cir. 1993) (noting that although the autopsy and crime scene photographs were graphic, the photos were relevant to the determination of the defendant's intent and state of mind); United States v. Corley, 519 F.3d 716, 726 (7th Cir. 2008) ("[P]ictures depicted the state of McNeal's body after having been set afire, and were probative of the manner of death, the extent of the injuries, and the viciousness of the attack."); Wilson v. Sirmons, 536 F.3d 1064, 1114 (10th Cir. 2008), opinion reinstated sub nom, Wilson v. Workman, 577 F.3d 1284 (10th Cir. 2009) (holding "gruesome" autopsy photographs properly admitted where photos "aided the medical examiner in his explanation of the wounds to the victim and manner of death" and were "relevant to show the cause of death and the intent of the attacker"); United States v. Fields, 483 F.3d 313,

355-56 (5th Cir. 2007) (Autopsy photos "helped the jury understand the medical examiner's testimony" and supported the Government's theory on the cause of death.); United States v. Collins, 368 F. App'x 517, 521 (5th Cir. 2010) ("[A]utopsy photographs also convey information vital to the Government's case. All four photos helped the jury understand the medical examiner's testimony regarding the results of the autopsy.").

The Government will be required to prove not only that Mr. Earvin was assaulted but that the Defendants conspired to deprive and did deprive Mr. Earvin of his constitutional right to be free from cruel and unusual punishment, they intended to do so, and that bodily injury and death resulted from the offenses. See Pattern Criminal Jury Instructions of the Seventh Circuit (2020 ed.) at 205-06, 212-213 18 U.S.C. § 241, (Definition of "Bodily Injury" and Death). The Government states that the hospital and autopsy photographs are a crucial part of its case. The photos visually depict Mr. Earvin's condition following the assault, his multiple external and internal injuries, and the cause of his death. According to the Government, the one hospital photograph is extremely probative because it confirms the Government's theory as to the manner in

which the alleged crimes were committed and Mr. Earvin's resulting condition shortly thereafter. The Government claims the photographs are critical and highly probative because they will aid and corroborate the testimony of the medical experts and will provide a clearer picture of Mr. Earvin's injuries, the cause of his death, the viciousness of the offense, and the Defendants' malice aforethought.  The photographs are also probative of whether the force used against Mr. Earvin was "for the purpose of harming the prisoner" or a "good faith effort to maintain or restore security or order."   See Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.) No. 7.18, Eighth Amendment: Excessive Force Against Convicted Prisoner – Elements.

Further, the Defendants' suggestion that there is no dispute concerning the nature of the injuries Mr. Earvin suffered or the cause of death does not appear to be entirely accurate.  The Government states that Defendants have indicated that there is a dispute (or unwillingness to stipulate) on a number of issues, including: (1) the manner in which the alleged assault occurred; (2) the location where the assault occurred; (3) the severity and viciousness of the assault and Mr. Earvin's injuries (including a possible brain injury); (4) the

persons responsible for the assault, and their intent; and (5) the cause of Mr. Earvin's death.

In the Defendants' Motion in Limine No. 5-1, the Defendants state: "The Government's recitation is not . . . a full characterization of all the facts of the events that unfolded on May 17, 2018, the date in question as the Government disclosures to date indicate that Mr. Earvin was assaulted and/or sustained and/or likely sustained injuries at other places and at the hands of others." Def. Mot. 5-1, d/e 142 at 5-6.

The Government further states that Defendant Banta intends to call his own expert witness, J. Scott Denton, M.D., Forensic Pathologist and Illinois Coroner's Physician in McLean County, who the Government expects will challenge its evidence as to the manner in which the alleged assault occurred, the location where the alleged assault occurred, the severity and viciousness of the assault and Mr. Earvin's injuries (including a possible brain injury), and the cause of Mr. Earvin's death.

Additionally, in Defendant Banta's motion to reconsider the Court's Order concerning *voir dire* questions, Banta asks the Court to consider asking potential jurors about their "Healthcare

experience."  The motion states that "[a] key issue in this case is whether Defendant Banta's conduct caused serious bodily injury or death to the inmate[,]" and that "questions going to the healthcare experience of potential jurors is clearly related to the issues in this case."  Def. Banta's Motion for Reconsideration, d/e 162, at 2.

Based on the Defendants' prior filings and the apparent nature of the expert testimony that Defendant Banta intends to elicit, it appears that a number of key issues regarding the alleged assault and cause of Mr. Earvin's death are contested.  The photographs likely will be of assistance to the jury in understanding the testimony of the medical experts.  The photographs potentially will provide a clearer picture of the extent of the alleged force, the nature of Mr. Earvin's injuries, and the cause of his death.  Because these issues remain in dispute, the Court concludes that the hospital and autopsy photographs are highly relevant.

In alleging the photographs are inflammatory and unduly prejudicial, the Defendants cite several examples as unnecessary to present to the jury: (1) photographs of Mr. Earvin lying on the autopsy table which show abrasions to his knees, shoulder and forehead when the Government has photos of these injuries while he

was alive and immediately after the alleged incident, not 30 days later; (2) a photograph with a close-up view of Mr. Earvin's facial area with his face having been removed, given that there is no contention that Mr. Earvin suffered any facial injuries, or such injuries caused his death; and (3) a photograph of a close-up view of the opened-up throat area of Mr. Earvin, even though there is no contention that there were injuries to his throat or such injuries caused his death.

In support of Defendants' argument regarding prejudice, the Defendants cite two cases which involved the admission of graphic photographs of homicide victims in cases wherein neither the victim's death nor the cause of death was at issue, which resulted in the Seventh Circuit concluding that "the only conceivable reason for placing them in evidence was to inflame the jury." Gomez v. Ahitow, 29 F.3d 1128, 1139 (7th Cir. 1994) quoting Ferrier v. Duckworth, 902 F.2d 545, 548 (7th Cir. 1990).  Because issues surrounding the assault and the cause of Mr. Earvin's death remain in dispute in this case, those cases are inapposite.  Because of the high degree of probative value of the photographs, some risk of prejudice is acceptable.  See e.g., Whitehead, 680 F.3d at 930.  While recognizing there is some risk of prejudice, the Court concludes that the

significant probative value of the photographs is not substantially outweighed by the danger of unfair prejudice.   Additionally, a defendant "may not stipulate or admit his way out of the full evidentiary force" of the government's case.   <u>Old Chief v. United States</u>, 519 U.S. 172, 186 (1997).   As a general matter, the government has a right "to present to the jury a picture of the events relied upon.   To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight."   <u>Id</u>. at 187.

It is also worth noting the Government states that it does not intend to introduce all of the photographs.   The exclusion of all photographs would serve to dilute the Government's evidence and potentially prevent the Government from fully and accurately presenting to the jury the nature, viciousness, and extent of the assault of Mr. Earvin and the cause of his death.   As noted previously, a number of courts have permitted the introduction of autopsy photos and graphic crime scene photos for those very types of reasons.   To limit the risk of unfair prejudice, the Court may consider giving the jury a limiting instruction and, if appropriate, limiting the extent of the publication of the photographs to the jury.

16

The Court has absolutely no reason to believe that the introduction of the hospital and autopsy photographs during the medical testimony will cause the jury to decide the case on an improper basis instead of the evidence presented.   Because the probative value of the hospital and autopsy photographs is not substantially outweighed by the danger of unfair prejudice, the Court has no basis to exclude the evidence under Rule 403.   For the foregoing reasons, the Court concludes that the  photographs are relevant and admissible.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion in Limine No. 2-1 [d/e 159] is DENIED.

The Defendants' Motion in Limine No. 2-2 [d/e 172] is DENIED.

ENTER: November 2, 2021

FOR THE COURT:

/s/ *Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT COURT

17