**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-CR-30067 |
| | ) | |
| TODD SHEFFLER and | ) | |
| ALEX BANTA, | ) | |
| | ) | |
| Defendants. | ) | |

**THE UNITED STATES OF AMERICA'S POSITION
<u>REGARDING A FURTHER CONTINUANCE</u>**

NOW COMES the United States of America, by Douglas J. Quivey, Acting United States Attorney for the Central District of Illinois, and Timothy A. Bass and Eugene L. Miller, Assistant United States Attorneys, and hereby notifies the Court and the parties that, should the defendants seek a further continuance of the trial and should the Court conclude it cannot try the case in Springfield, Illinois, as scheduled on January 3, 2022, the United States will request an intra-district transfer of the trial to Peoria, Illinois. In support of this position, the United States submits the following:

1

## **BACKGROUND**

1.    The indictment in this matter alleges that on or about May 17, 2018, defendants Todd Sheffler, Willie Hedden, and Alex Banta deprived inmate Larry Earvin of his right to be free from cruel and unusual punishment by unlawfully assaulting him, resulting in his death.

2.    On December 4, 2019, a federal grand jury indicted the defendants on multiple counts related to depriving an individual of his civil rights resulting in his death and obstruction of justice in attempting to cover up the alleged crime. Defendants Sheffler and Banta have pleaded not guilty and demanded a jury trial. The Court released the defendants on conditions of bond pending trial almost two years ago. R. 16, 19, 22.

3.    The case was originally assigned to United States Senior District Judge Richard Mills in Springfield, Illinois. The Court granted defense motions to continue the jury trial in this matter on approximately seven occasions while the matter was assigned to Judge Mills, with jury selection eventually scheduled to begin on June 24, 2021. D.E. 1/23/20; 4/28/20; 7/23/20; 10/21/20;

12/21/20; 1/29/21; 3/10/21. Many of those continuances were precipitated by the Central District of Illinois General Order Regarding the COVID-19 Public Emergency.

4.     On June 11, 2021, this case was transferred to United States District Judge Sue E. Myerscough for all further proceedings.[1] D.E. 6/11/21. Thereafter, the Court has granted defense motions to continue the jury trial in this matter on approximately five occasions. D.E. 6/22/21; 6/25/21; 7/20/21; 8/4/21; 10/21/21. The most recent continuances were precipitated by the Court's findings that the trial could not be conducted safely in the United States Courthouse in Springfield, Illinois, based on the ongoing public health dangers associated with COVID-19 in the Springfield Division. D.E. 8/5/21; 10/22/21.

5.     Jury selection in this matter is currently scheduled to begin on January 3, 2022, with the trial to begin on January 5, 2022. Both jury selection and the trial are scheduled to take place at the United States Courthouse in Springfield, Illinois. The Court

---

[1] The companion civil case, *Pippion v. Hedden, et al.*, No. 19-cv-03010, is also assigned to this Court. On October 26, 2021, this Court entered an order staying discovery as to all defendants in that matter.

has directed that any further requests for a continuance be addressed no later than December 14, 2021. The United States has engaged in extensive pretrial preparation and coordination with its witnesses and will continue to do so in anticipation of the January 3, 2022, trial date. This coordination will include scheduling trial preparation meetings with numerous witnesses, including out-of-town and expert witnesses, during the holiday season and ensuring their availability to testify beginning on January 5, 2022, and as needed during the trial thereafter.

## **COVID-19**

6.    The United States anticipates that the concerns expressed by the Court and defense counsel in August and October of 2021 related to the risks of COVID-19 presented by proceeding to trial in Springfield may not be significantly mitigated by January 3, 2022. More specifically, the Court's findings in August and October of 2021 were based on the large number of counties in the Springfield Division classified as COVID-19 high transmission (15 of 16 in August and 13 of 16 in October) and substantial transmission (one in August and three in October) counties.

7.    As of November 18, 2021, 13 of 16 counties in the Springfield Division remain classified as high transmission. Moreover, according to the CDC website, new COVID-19 cases in Illinois have increased significantly since November 1, 2021, and are forecasted to remain at or above those elevated levels through December of 2021.[2]

8.    Thus, the same factors underlying the Court's finding that the trial could not be conducted safely in the United States Courthouse in Springfield, Illinois, in August and November of 2021 due to the ongoing public health dangers associated with COVID-19 may still be present on January 3, 2022. Consequently, the defendants may seek another continuance of the trial date. Accordingly, for the convenience of the Court and the parties, the United States respectfully submits its position in opposition to a

---

[2] For example, on November 10, 2021, Illinois public health officials announced 5,044 new cases of COVID-19, the highest total in two months, raising concerns about a rise in infections as people spend more time indoors due to colder weather and gather during the holiday season. *See* https://chicago.suntimes.com/coronavirus/2021/ 11/10/22775264/illinois-coronavirus-cases-rising-5000-covid-chicago-masks-cold. Some public health experts have warned that a new surge of COVID-19 cases is expected in the United States starting around Thanksgiving. *See* https://www.nbcchicago.com /news/coronavirus/is-covid-19s-winter-surge-already-here-experts-warn-pandemic-isnt-over/2680819/.

further continuance and an alternative to the Court so that the trial may proceed in or around January of 2022.

## DEFENSE OBJECTIONS TO THE COURT'S SAFETY PROTOCOLS

9.      As the Court has set forth on the record, the United States Courthouse in Springfield, Illinois, is configured in such a way that it is not possible to rearrange the courtroom to accommodate for the increased risks presented by COVID-19, as has been done in other courtrooms in the Central District of Illinois.

10.    As a result, even when the Court determines it is safe to proceed with the jury selection and jury trial in this matter, the Court has ruled that it will implement certain safety protocols. The defendants, however, have objected to these safety protocols. Namely, the defendants have objected to the Court's prior rulings that (1) vaccinated jurors will first be called for voir dire; (2) that jurors will be seated behind the bar in the spectator section of the courtroom; and (3) that witnesses will testify from the jury box wearing face shields.

11.    While the United States has not objected and does not object to the Court's safety protocols, it acknowledges that these

rulings are matters of first impression that may be raised as issues on appeal should the defendants be convicted.

## SPEEDY TRIAL

12.    The Speedy Trial Act, 18 U.S.C. § 3161, *et al.*, is not solely to protect a defendant's right to a speedy trial, but "was designed with the public interest firmly in mind." *Zedner v. United States*, 547 U.S. 489, 498–99 (2006). To this end, the Speedy Trial Act permits, under some circumstances, the severe sanction of dismissal with prejudice to give "the prosecution a powerful incentive to be careful about compliance." *Id.* at 499; *see also United States v. Ramirez*, 788 F.3d 732, 735 (7th Cir. 2015); *United States v. Wasson*, 69 F.3d 938, 945-46 (7th Cir. 2012). It is in light of this admonition from the Supreme Court that the United States has urged careful compliance with the Speedy Trial Act throughout this case.

13.    Members of the public, including the victim's family, have been waiting three and a half years since Mr. Earvin's death, and almost two years since indictment, for resolution of these charges.

During this time, the defendants have remained released on conditions of bond.

14.    During the same time frame that this matter has been continued due to the public health dangers presented by COVID-19 at the Springfield courthouse, the United States Courthouse in Peoria, Illinois, has safely conducted and resolved at least five jury trials, including, *United States v. Bryan Rossi,* 20-CR-20017-MMM (July 6-7, 2021); *United States v. De'Andre Smith* 20-CR-20051-MMM (September 29-30, 2021); *United States v. Robert Anderson,* 20-CR-20022-MMM (October 4-6, 2021); *United States v. Joseph Wilcher,* 20-CR-40069-JES (October 4-6, 2021); and *United States v. Christopher Simmons,* 20-CR-10029-JES (October 24-26, 2021). Additional federal jury trials are scheduled in Peoria in December of 2021.

## **VENUE**

15.    "[T]he constitutional unit of venue is the district, not the division." *United States v. Alvarado*, 647 F.2d 537, 539 (5th Cir. 1981). Thus, "[a] defendant has no constitutional right to a trial within a certain division, as long as the trial takes place within the

8

district in which the offense took place[.]" *United States v. Knop*, 701
F.2d 670, 675 (7th Cir. 1983); *see also United States v. Reynolds*,
64 F.3d 292, 296 (7th Cir. 1995); *United States v. Erwin*, 155 F.3d
818, 824 (6th Cir. 1998) (en banc) ("there is no constitutional or
statutory requirement that a defendant's trial take place in a
specific courtroom or division within a federal judicial district.")

16.   Similarly, "*the jury is not required to be selected either
from the entire district or from the division in which the crime was
committed.*" *United States v. Balistrieri*, 778 F.2d 1226, 1229 (7th
Cir. 1985) (emphasis added). "Federal defendants are often tried in
a venue at some distance from the location of the underlying
offense. 'Yet, as long as the trial takes place within the district in
which the offense took place, no error occurs.'" *Humphrey v. United
States*, 896 F.2d 1066, 1068 (7th Cir. 1990).

17.   Under Rule 18 of the Federal Rules of Criminal
Procedure, "[t]he court must set the place of trial within the district
with due regard for the convenience of the defendant, any victim,
and the witnesses, and the prompt administration of justice." Fed.
R. Crim. P. 18; *see also Balistrieri*, 778 F.2d at 1229; *United States*

*v. Bartelt*, 1997 WL 436229, at *2 (N.D. Ill. July 7, 1997) ("Intra-

district transfers are governed by Rule 18").

18.   In addition, "although the text of Rule 18 refers only to

convenience and prompt administration, the district court may

consider other factors." *United States v. Lipscomb*, 299 F.3d 303,

340 (5th Cir. 2002). "[S]uch factors commonly include, but are not

necessarily limited to, docket management, courthouse space and

security." *Id.* "In the context of docket management, . . . the term

'prompt administration of justice' . . . refer[s] not just to the

particular case that may be transferred, but also to other trials on

the court's docket." *Id.* at 342. "A district court may consider docket

management in its Rule 18 balancing, and docket issues may even

outweigh convenience factors that point entirely the other way." *Id*;

*see also United States v. Christensen*, No. 17-CR-20037-JES,

Docket No. 163 (Dec. 6, 2018) (transferring capital trial from

Urbana to Peoria pursuant to Rule 18 based on docket management

concerns). "[A] trial court has broad discretion in deciding where to

fix the location of the trial which will not be overridden on appeal as

long as the court gives 'due consideration' to the factors listed in Rule 18." *Balistrieri*, 778 F.2d at 1229.

## POSITION

19.   The United States submits that, if the trial of this matter cannot proceed in Springfield on January 3, 2022, due regard for the prompt administration of justice pursuant to Rule 18 of the Federal Rules of Criminal Procedure warrants this Court setting Peoria as the place of trial within the Central District of Illinois.[3]

20.   As noted, it is possible, based on the Court's prior findings, that the ongoing public health danger presented by COVID-19 will prevent this case from proceeding to trial in Springfield, Illinois as currently scheduled on January 3, 2022, and perhaps for months thereafter. It would appear, however, that the case could proceed to trial in Peoria, Illinois during that same time frame due to the configuration of the courtrooms in Peoria. Thus, due regard for the prompt administration of justice, including the public's interest under the Speedy Trial Act, would warrant the

---

[3] The United States suggests only that the Court consider the placement of the trial in Peoria as an alternative to a further continuance and delay of the trial. It does not intend to suggest in any way that the case be transferred to another judge in the district.

Court setting Peoria as the place of trial if trial cannot take place as scheduled in Springfield.

21.    Moreover, Rule 18's reference to the prompt administration of justice must be evaluated independently of a defendant's willingness to waive the Speedy Trial Act. *In re Chesson,* 897 F.2d 156, 159 (5th Cir. 1990) (rejecting defendant's "overly myopic view of the phrase 'prompt administration of justice'"). As noted above, the public has an equally compelling interest in a speedy trial under the Speedy Trial Act. "The court must balance not only the effect the location of the trial will have upon the defendants and their witnesses, but it must weigh the impact the trial location will have on the timely disposition of the instant case and other cases." *Id.*

22.    Other district courts have granted Rule 18 transfers when necessary to promptly administer justice in light of the hurdles caused by the ongoing COVID-19 pandemic. *See, e.g., United States v. Barrett,* 2021 WL 1739241, at *2-6 (S.D. Miss. May 3, 2021) (transferring case to Gulfport courthouse pursuant to Rule 18 because Hattiesburg courthouse could not handle a multi-

defendant, multi-week jury trial with the court's current COVID-19 mitigation protocols); *United States v. Wilson*, 2020 WL 3840034 at *2 (S.D. Miss. July 8, 2020) ("Here, the logistics – *as complicated by the COVID-19 pandemic* – support the Government's assertion that it would be in the best interest of judicial economy to conduct the trial in [a different division].") (emphasis added).

23.    Second, the convenience of the defendant, the victim, and the witnesses would not be noticeably affected by transferring the place of trial to Peoria from Springfield if required for the prompt administration of justice. The alleged crime occurred in Mt. Sterling, Brown County, Illinois. The defendants and many of the witnesses are from that area. The victim's family is from the Chicago area. The federal courthouse in Springfield, Illinois is located approximately 77 miles from Western Illinois Correctional Center by the fastest route. The federal courthouse in Peoria, Illinois is located approximately 91 miles from Western Illinois Correctional Center by the fastest route. Moreover, Peoria is closer to Chicago than Springfield is.

24.    Third, if this matter cannot proceed to trial in Springfield on January 3, 2022, the Court's docket management may also weigh in favor of transfer to Peoria for trial. As the Court noted at a previous hearing, it may be unavailable to try this case in Springfield in either February or March of 2022. A transfer to Peoria may allow this case to be tried sooner than if the place of trial remains in Springfield. Moreover, a district court's docket concerns are not a permissible reason to continue a case under the Speedy Trial Act. *See Ramirez*, 788 F.3d at 735.

25.    Finally, if the trial cannot proceed as scheduled in Springfield, a transfer to Peoria may have the benefit of ameliorating the defendants' concerns with the trial protocols that would be necessary should the trial take place in Springfield. Namely, due to the configuration of the Peoria courthouse, criminal trials there have been held without separating vaccinated and unvaccinated jurors, requiring the jurors to sit in the gallery, or requiring witnesses to wear face shields. Transfer of this case to Peoria for trial may eliminate the defendant's concerns and avoid potential appellate issues. *See, e.g., Wilson,* 2020 WL 2840034, at *2

(transferring pursuant to Rule 18 after finding that "[t]he courthouse in Natchez is considerably less spacious than the courthouses in Gulfport and Jackson, and it is not large enough to accommodate the distance measures which are desirable and necessary to protect the health of all concerned").

26.    Based on the foregoing, it would appear that the prompt administration of justice would warrant the transfer of this case to Peoria for trial should the trial be unable to proceed in Springfield on January 3, 2022. *United States v. Oury,* 2021 WL 2942521, at *5 (S.D. Ga. July 13, 2021) (transferring case within district pursuant to Rule 18 based on availability of appropriate courtroom space during pandemic; noting that "this case has been pending for over two years, and the trial has been repeatedly delayed due to the COVID-19 pandemic. Now that the pandemic has sufficiently abated to the point that the Court can safely resume jury trials, Defendant, the prosecution, the public, the alleged victims, and the Court all have a vested interest in the case being tried without further delay.").

## **CONCLUSION**

27.   Based on the foregoing, the United States respectfully states its position that, should this case not be able to proceed to trial in Springfield, Illinois, on January 3, 2022, due to COVID-19, then, pursuant to Rule 18 of the Federal Rules of Criminal Procedure, this Court should set the place of trial within the Central District of Illinois in Peoria, Illinois in January of 2022 with due regard for the prompt administration of justice.

Respectfully submitted,

DOUGLAS J. QUIVEY
ACTING UNITED STATES ATTORNEY


s/Douglas J. Quivey
318 South Sixth Street
Springfield, IL 62701
217/492-4450
Fax: 217/492-4512
Dquivey@usdoj.gov

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

s/ Timothy A. Bass
Timothy A. Bass
Assistant United States Attorney
318 South Sixth Street
Springfield, IL 62701
217/492-4450
Fax: 217/492-4512
tim.bass@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants.

s/ Eugene L. Miller

Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov