**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No.: 19-CR-30067 |
| TODD SHEFFLER,<br>WILLIE HEDDEN, and<br>ALEX BANTA | |
| Defendant. | |

## DEFENDANT BANTA'S MOTION *IN LIMINE* NO. 8

Defendant ALEX BANTA, by his attorneys, moves this

Court pursuant to Federal Rule of Criminal Procedure 16(d),

Federal Rules of Evidence 104, and the inherent authority of

this Court to manage the trial in this case,[1] for entry of an

---

[1] "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. U.S.,* 469 U.S. 38, 41 n.4 (1984). "Motions in limine are common, and frequently granted, in criminal as in civil trials." *U.S. v. Warner,* 506 F.3d 517, 523 (7th Cir. 2007). Such motions permit the district court to eliminate evidence "that clearly ought not be presented to the jury," because it is "inadmissible for any purpose," *Jonasson v. Lutheran Child and Family Services,* 115 F.3d 436, 440 (7th Cir. 1997) *accord U.S. v. Tokash,* 282 F.3d 962, 968 (7th Cir. 2002).

FeldmanWasser
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL  62705
217/544-3403

Page **1** of **15**

order prohibiting Government witness Dr. Patrick Collier from (a) testifying about the opinion of Dr. Todd D. Elmore as to whether Larry Earvin suffered a traumatic brain injury and (b) from opining that Dr. Elmore's opinion is consistent with Dr. Collier's opinion,  and (c) ordering the Government to redact from the St. John's Hospital Medical Records the opinion of Dr. Elmore (at Bates numbered pages 2411 and 2534) regarding whether inmate Earvin had a traumatic brain injury.

In support of this Motion Defendant Banta states as follows:

Preliminary Note:  This Motion makes reference to (i) a medical record of Inmate Earvin when he was at St. John's Hospital ("SJH") that has not been previously filed under seal (SJH Record, Bates numbered pages 2410-2411) and (ii) a medical record of Inmate Earvin when he was at SJH(SJH Record, Bates numbered page 2354) that was previously

sealed as part of Government Exhibit 2 in the *Daubert* hearing. In view of the personal medical information contained in the documents, Defendant Banta is simultaneously filing a motion to submit this medical record to the Court under seal.

1.  Defendant Banta stands indicted on several serious charges (d/e #1), all arising from an incident on May 17, 2018 at a state correctional center involving inmate Larry Earvin. The charges include Count I – Conspiracy to Deprive Civil Rights and Count II – Deprivation of Civil Rights. These charges are based on allegations that Defendant Banta and the other defendants assaulted inmate Earvin.

2.  The Government has disclosed as an expert witness, Dr. Patrick Collier. The Court is familiar with the expected testimony of Dr. Collier by reason of Defendant Banta's Motions *In Limine* Nos. 5 (d/e #83) and 501 (d/e #142), the *Daubert* hearing regarding Dr. Collier's opinions,

and this Court's Opinion of July 23, 2021 (d/e #157) following the *Daubert* hearing.

3.    One of the opinions of Dr. Collier, as noted in that Court's Opinion is that Inmate Earvin suffered a concussion which is a mild traumatic brain injury. (Court's Opinion at pages 4-6; Transcript of *Daubert* hearing at pages 43-55, 109-117).  The Court's Opinion concluded that Dr. Collier's opinions are admissible under *Daubert,* including his opinions about whether inmate Earvin suffered a concussion or a traumatic brain injury. (Opinion at page 12)

4.    Dr. Collier, in his *Daubert* hearing testimony, referenced that the St. John's Hospital ("SJH") medical records contained a report by Dr. Todd D. Elmore, a neurologist, (SJH Records at Bates numbered pages 2410-2412 and page 2534), who determined on May 25, 2018, that imaging Dr. Elmore reviewed was consistent with traumatic brain injury. (Transcript at pages 53-54, 109-111). The SJH

Records at Bates numbered page 2534 contains a summary statement of that same opinion by Dr. Elmore on this same subject.[1]

5.     As the *Daubert* hearing transcript clearly shows, the Government placed on the record Dr. Elmore's opinion to show that there was a neurologist opinion that was consistent with Dr. Collier's opinion, thus offered to bolster the credibility of Dr. Collier's opinion. Dr. Elmore is not listed as a Government witness nor disclosed as an expert witness and is thus will not be testifying at trial.[2]

6.     Dr. Collier acknowledged that he has no medical background in neurology, that he is not trained as a neurologist, and that he has never testified as an expert on

---

[1] This page from the SJH records is contained in Government Exhibit No. 2 at the *Daubert* hearing.

[2] Should the Government now, at this late date, disclose Dr. Elmore as an expert, Defendant Banta will require a continuance of the trial in order to secure and consult with his own expert on this issue.

the subject of traumatic brain injury or concussion. (Transcript at page 67).  Further, Dr. Collier acknowledged that he is not qualified to read radiology images and is even less comfortable reading MRI's.  (Transcript at pages 29-30)

7.    Moreover, by his testimony at the *Daubert* hearing, it is self-evident that Dr. Collier did not rely upon Dr. Elmore's report as a basis for his opinions regarding any concussion or traumatic brain injury to Inmate Earvin.  Dr. Collier testified that he never consulted with Dr. Elmore nor with the radiologist who did the MRI referenced in Dr. Elmore's report.  (Transcript at pages 53-54, 83, 122-123). Further, Dr. Collier testified that he did not know what imaging Dr. Elmore was referring to in his report nor what Dr. Elmore meant by "consistent" when Dr. Elmore wrote that the "imaging consistent with TBI". (Transcript at page 82).

8.    Based upon the questions put to Dr. Collier by Government counsel at the *Daubert* hearing regarding Dr. Elmore's report (Transcript at pages 53-54, 109-111), Government counsel may seek to have Dr. Collier testify at trial about Dr. Elmore's opinion. For the reasons stated herein, such testimony should not be permitted.

9.    Rule 703 extends the foundational basis for Dr. Collier's expert testimony to include facts or data in the case that he has been made aware of and upon which an expert in his field reasonably relies.

10.   Courts routinely admit this sort of evidence, not for the truth of the matters asserted, but to inform the jury of the basis of the expert's opinion. *In re James Wilson Associates,* 965 F.2d 160, 172-73 (7th Cir. 1992).  But in criminal cases, the inquiry under Rule 703 must go beyond finding that hearsay relied on by an expert meets these standards, as reliance upon hearsay "would nevertheless violate a

FeldmanWasser
1307 S. Seventh St.
Springfield, IL  62703
217/544-3403

defendant's constitutional right to confront adverse witnesses." *United States v. Lawson*, 653 F.2d 299, 302 (7th Cir. 1981)

11. While Rule 703 allows Dr. Collier to rely on the facts or data that he was made aware of to reach his opinion, Rule 703 "was not intended to abolish the hearsay rule and to allow a witness under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005).   Although the Court found Dr. Collier had the expertise to testify about whether Inmate Earvin had a concussion,  "[an expert], however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002).   Dr. Collier

cannot therefore simply voice the opinion of Dr. Elmore about whether Inmate Earvin had a traumatic brain injury.

12.   As further stated in *In re James Wilson Associates*, 965 F.2d 160, 173 (7th Cir. 1992), "it is improper to use an expert witness as a screen against cross-examination", meaning that the testifying expert could not use what another expert in a different domain of expertise stated to testify for the purpose of vouching for the truth of what the other expert told him.  As stated by the District Court for the District of the Virgin Islands in *Muhsin v. Pacific Cycle, Inc.,* 2012 U.S. Dist. LEXIS 80441, at *23:

> As the cases demonstrate, an expert may rely and testify concerning the opinions of other experts only when the testifying expert has the specialized knowledge necessary to understand, corroborate, and articulate the science behind the opinion.  *Dura Automotive*, 285 F.3d at 612-614; TK — 7 Corp., 993 F.2d at 732 [Tenth Circuit 1993]; *In re Imperial Credit*

*Indus., Inc. Secs. Litig.*, 252 F. Supp. 2d at 1012 n.5
[C.D. Calif. 2003].[3]

*Accord Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 n.17
(4th Cir. 2017)(an expert witness may not bolster the
reliability of his own opinion by testifying about a non-
testifying expert witness' credentials and opinion); *Mike's
Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409 (6th Cir.
2006)(recognizing that "[o]ther circuits have squarely
rejected any argument that Rule 703 extends so far as to
allow an expert to testify about the conclusions of other
experts"); *Bank of Am., N.A. v. Veluchamy (In re Veluchamy)*,
524 B.R. 277, 318 (Bankr. N.D. Ill. 2014) ("an expert may
not merely repeat the opinions of other experts" citing to the
Sixth Circuit *Mike's Train House* case)

---

[3] This case is cited with approval in *Agnew v. Cater*, No. 3:18-
cv-50035, 2022 U.S. Dist. LEXIS 18734, at *18 (N.D. Ill. Feb.
2, 2022)

13.  *See also Hutchinson v. Groskin*, 927 F.2d 722 (2d Cir. 1991) (expert referred to letters from three experts and said they were "consistent" with his opinion. The court of appeals reversed, condemning this "tactic" to evade the hearsay rule)  The federal court for the Southern District of Indiana in *Mirowski Family Ventures, LLC v. Boston Sci. Corp.*, 2013 U.S. Dist. LEXIS 22844 at *7 (S. D. Ind. Veb. 20, 2013) followed *Hutchinson* and barred an expert from testifying about another expert's report as consistent with his opinion particularly as the expert did not rely on the other expert's report in conducting his own analysis.

14. Dr. Collier reached an opinion about Inmate Earvin's neurological condition – mild traumatic brain injury or concussion – but unlike in the cited cases where the expert claimed to have relied on the opinion of another expert,  Dr. Collier did not even rely upon the report of Dr. Elmore, of which he did not understand, and which dealt with an area

of medicine – neurology and radiology of which Dr. Collier professes no expertise.  As in *Mirowski* and *Hutchinson*, and the other above-cited case law, to allow Dr. Collier to testify about Dr. Elmore's report and to highlight Dr. Elmore's opinion and to opine that he finds that it is consistent with his own opinion about Inmate Earvin is the very kind of inadmissible bolstering and vouchering that has been condemned by the courts and allows the Government to get Dr. Elmore's opinion in through the proverbial "back door" without any ability of Defendant Banta to exercise his constitutional right to cross-examine Dr. Elmore.

15. What would make the admission through Dr. Collier of Dr. Elmore's opinion even more egregious is that Dr. Collier's opinion is simply an opinion about a "possibility" (Transcript at pages 54-55, 80 and 83) and Dr. Elmore's opinion (Bates page 2444) is equally evasive: "Looking at his MRI scan report <u>looks that he has</u> had significant head

injury....has some external injuries to his head consistent with this. [emphasis supplied]"

16. Under the above-cited authorities, it would be improper to allow Dr. Collier to testify about the opinions of Dr. Elmore regarding any head injury to Inmate Earvin because: (a) Dr. Collier never relied upon Dr. Elmore's report in forming his own opinion; and (b) such testimony would simply have Dr. Collier being, in the words of the above authorities, a mouthpiece for Dr. Elmore, vouching for the truth of what Dr. Elmore said, and using Dr. Elmore's opinion to bolster the credibility of Dr. Collier's opinion about Dr. Collier's reading of the MRI of Inmate Earvin and Dr. Collier's opinion that Inmate Earvin suffered from a concussion.

Wherefore, Defendant ALEX BANTA prays that this Court enter an order granting the relief sought in this Motion, being an order barring Dr. Collier from making any reference

in any manner to Dr. Elmore's report or opinion about what the MRI showed with regard to whether Inmate Earvin had a head injury, including Dr. Elmore's opinion that there was a shear injury; and ordering that the Government redact from the St. John's Hospital records that the Government has listed as an exhibit Dr. Elmore's reported impression about the MRI scan (Bates numbered page 2411 and 2354).

ALEX BANTA, Defendant,

/s/Stanley N. Wasser
Stanley N. Wasser,
#2947307
One of His Attorneys
FeldmanWasser
1307 South Seventh Street
Springfield, IL 62703
217-544-3403
swasser@feldman-wasser.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Timothy A Bass          tim.bass@usdoj.gov

Eugene L. Miller         eugene.miller@usdoj.gov

Sara Vig                 sara @vig-law.com

William L Vig            bill@vig-law.com

Mark Wycoff              mark@wycofflaw.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Not Applicable

BY:  /s/Stanley N. Wasser
Stanley N. Wasser, #2947307
FeldmanWasser
1307 South Seventh Street
Springfield, IL 62703
217-544-3403
swasser@feldman-wasser.com