IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-30067 |
| | ) |
| TODD SHEFFLER, | ) |
| WILLIE HEDDEN, and | ) |
| ALEX BANTA. | ) |
| | ) |
| Defendants. | ) |

**GOVERNMENT'S RESPONSE TO
DEFENDANT BANTA'S MOTION IN LIMINE 8**

The United States of America, by its attorneys, Gregory K. Harris, United States Attorney for the Central District of Illinois, and Timothy A. Bass and Eugene L. Miller, Assistant United States Attorneys, respectfully submits its response in opposition to Defendant Banta's motion in limine 8 and states the following:

**Introduction**

Despite this Court's prior ruling following the *Daubert* hearing denying Defendant Banta's prior motion in limine 5-1, and despite the settled principle that medical records are admissible as business records under Rule 803(6) of the Federal Rules of Evidence, Defendant Banta has now filed motion in limine 8, in which he seeks to exclude just two (2) pages of Mr. Earvin's medical records, reflecting a diagnosis by Dr.

Elmore (Neurologist) of a traumatic brain injury following the results of an MRI, and any testimony by Dr. Collier referencing Dr. Elmore's report. Because Defendant Banta's motion is contrary to this Court's prior ruling (which is the law of the case), and because Mr. Earvin's medical records are independently admissible under Rule 803(6), which Defendant Banta does not acknowledge or dispute, the government respectfully requests that his motion in limine 8 be denied.

## **Background**

On December 5, 2019, the defendants, Willie Hedden, Todd Sheffler, and Alex Banta were charged in a ten-count indictment with conspiracy to deprive civil rights, deprivation of civil rights, conspiracy to engage in misleading conduct, obstruction – falsification of document, and obstruction – misleading conduct.

The indictment alleges that as part of the conspiracy to deprive and deprivation of the rights of Larry Earvin, an inmate at the Western Illinois Correctional Center (WICC), and during their participation in the forcible escort of Mr. Earvin from his RI (D Wing) residential housing unit at WICC to the segregation housing unit on May 17, 2018, Defendants Sheffler, Hedden, and Banta assaulted Mr. Earvin without legal justification while he was restrained and handcuffed behind his back and while he posed no physical threat to the defendants or other

correctional officers. The indictment further alleges that Defendant Sheffler, the lieutenant and most senior officer, also willfully failed to intervene to protect Mr. Earvin from being assaulted by subordinate officers, namely, Defendants Hedden and Banta, despite having the opportunity to do so, and that Defendant Hedden, the sergeant and senior officer to Defendant Banta, willfully failed to intervene to protect Mr. Earvin from being assaulted by a subordinate officer, namely, Defendant Banta, despite having the opportunity to do so. The indictment alleges that the assault resulted in bodily injury to Mr. Earvin, including multiple broken ribs, a punctured colon, and other serious internal injuries, and further resulted in Mr. Earvin's death.

Defendant Hedden has pleaded guilty to certain charges in the indictment and agreed to testify at the trial of Defendants Sheffler and Banta. Defendant Hedden and other WICC officer/employee witnesses are expected to testify that the assault of Mr. Earvin that caused his severe injuries resulting in bodily injury and death occurred at the entrance to the segregation unit at WICC, after Defendant Sheffler had joined the escort of Mr. Earvin with Defendants Hedden and Banta. Defendant Hedden and other witnesses are further expected to testify that the assault included Defendant Banta jumping and landing on Mr. Earvin's torso with his knees and the defendants punching, kicking, and

stomping on Mr. Earvin, resulting in internal injuries to Mr. Earvin, including broken ribs, a punctured colon, and his eventual death.

### Expected Expert Testimony from Dr. Patrick Collier

As established and credited by the Court following the *Daubert* hearing, the government intends to present expert testimony from Dr. Patrick Collier, a M.D. and Trauma Surgeon at St. John's Hospital in Springfield, and Dr. Norfleet, who performed the autopsy on Mr. Earvin. Dr. Collier treated and performed surgery on Mr. Earvin after he was life-flighted (transported) to St. John's Hospital, which involved identification and treatment of Mr. Earvin's substantial internal injuries, including internal bleeding, broken ribs, and a collapsed lung, and partial removal of his colon and an ileostomy. In sum, Dr. Collier (and Dr. Norfleet) will testify to the contents of Mr. Earvin's medical records, the injuries (external and internal) he sustained (including head trauma), the cause of and/or contributing factors to his death, the types of trauma that are likely to have caused his injuries (including being punched, kicked, jumped on, stomped on, etc.), the likelihood or certainty that the more serious types of trauma (kicking, jumping on, stomping on, etc.) are the causes of Mr. Earvin's internal injuries and contributed to or caused his death, rather than the result of mere punching, and to the likelihood that Mr. Earvin was not suffering from these internal injuries prior to his

arrival at the segregation unit while being escorted by Defendants Banta, Sheffler, and Hedden.

## This Court's *Daubert* Ruling

More than seven months ago, in July 2021, Defendant Banta filed motion in limine 5-1, in which he sought to exclude at trial only a small part of Dr. Collier's testimony that Mr. Earvin may have suffered a traumatic brain injury, including a concussion. (R.142) Following a *Daubert* hearing, this Court denied that motion in its entirety. (R.157) In denying Defendant Banta's motion, this Court recognized the settled principle that "courts often find that a physician in general practice is competent to testify about problems that a medical specialist typically treats." (R.157 at p.9) (quoting *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). In crediting Dr. Collier's testimony at the hearing, this Court noted:

> Dr. Collier testified Dr. Elmore, a neurologist, determined on May 25, 2018 that the imaging was consistent with a traumatic brain injury. . . Dr. Collier testified that he based his conclusion that Earvin suffered from some type of mild shear injury or traumatic brain injury on Earvin's medical records, the results of the MRI, and his own observations. The radiologist's conclusions are consistent with Dr. Collier's opinion.

(R.157 at 5)

Thus, this Court held:

> Upon considering Dr. Collier's testimony, the exhibits, and the applicable law, the Court concludes Dr. Collier is qualified to provide an opinion that Mr. Earvin suffered from a type of traumatic brain injury such as a shear injury, concussion, or related injury. Dr. Collier testified his opinion is based on the MRI results [from Dr. Elmore], Mr. Earvin's medical records, and his treatment, and personal observations Mr. Earvin along with Dr. Collier's experience as a medical doctor and trauma surgeon.

> Dr. Collier's opinion is scientifically reliable given that it is well accepted within the medical field that 'it is not unusual for the CT scan to be entirely normal in a patient with TBI. In fact, the CT scan is typically normal in patients with milder TBI including concussion.' www.asnr.org/patientinfo/conditions/tbi.shtml (American Society of Neuroradiology). Moreover, 'even [an] MRI may not be able to detect any abnormality in a patient with TBI.' *Id.* The Court concludes that Dr. Collier is qualified to give this testimony and his methodology is scientifically reliable. Pursuant to Rule 702, moreover, the testimony potentially 'will help the trier of fact to understand the evidence or determine a fact in issue.' The Defendants' objections go to the weight, not admissibility of the testimony, or to Dr. Collier's qualifications, or to the reliability or relevance of the testimony. The testimony may be challenged by cross-examination and/or the presentation of contrary evidence.

> Accordingly, the Court has no basis to exclude Dr. Collier's testimony that Mr. Earvin suffered from a type of traumatic brain injury, such as shear injury, concussion or related injury.

(R.157 at pp.11-12)

## Government's Disclosure of Mr. Earvin's Medical Records and Intent to Introduce Them Under Fed.R.Evid. 803(6)

In addition to disclosing its intent to present expert testimony from Dr. Collier and Dr. Norfleet, the government has disclosed to Defendants Banta and Sheffler Mr. Earvin's medical records, including records from St. John's Hospital. The medical records are listed as Exhibits 21 – 25 on the government's amended exhibit list. (R.164) The St. John's medical records (Exhibit 21) include the government's Group Exhibit 2 that was admitted at the *Daubert* hearing, which, in turn, included Dr. Elmore's diagnosis that Mr. Earvin's "imaging [was] consistent with TBI." (*See* Government's *Daubert* hearing Group Ex. 2 at Bates No. 2534) The St. John's records also include the attached additional medical records, including Dr. Elmore's report, referencing that Mr. Earvin sustained a significant head injury, traumatic brain injury, and possible shear injury. (*See* attached Sealed Ex.)[1]

In addition, the government has repeatedly advised Defendants Banta and Sheffler that the government intends to introduce the medical records under Rule 803(6) of the Federal Rules of Evidence as business records, either through a stipulation with the defendants, a business

---

[1] The attached Sealed Exhibit also includes the Bates-numbered pages that Defendant Banta has filed as part of his motion in limine 8.

records certification, or through the testimony from a custodian of records.

To date, Defendants Banta and Sheffler have not advised the government or the Court of any objection to the admission of Mr. Earvin's medical records, including Dr. Elmore's report and the reports of other medical officials referencing a traumatic brain injury, as business records under Fed.R.Evid. 803(6).

### Defendant Banta's Motion In Limine 8

On March 13, 2022, Defendant Banta filed motion in limine 8. (R.238) Despite this Court's prior denial of his prior motion in limine 5-1 and holding that Dr. Collier may provide expert testimony that Mr. Earvin suffered from some type of mild shear injury or traumatic brain injury based on Mr. Earvin's medical records, the results of the MRI performed by, and the opinion of, Dr. Elmore, and Dr. Collier's own observations, Defendant Banta now requests that the Court preclude Dr. Collier "from making any reference in any manner to Dr. Elmore's report or opinion about what the MRI showed with regard to whether Inmate Earvin had a head injury." (R.230 at pp.13-14) He further requests that the Court order the government to redact from the medical records exhibit "Dr. Elmore's reported impression about the MRI scan." (R.230 at p.14)

## Argument

Given this Court's prior ruling, and given that Defendant Banta does not challenge the admission of other medical records referencing a traumatic brain injury or dispute or even mention that Mr. Earvin's medical records (including Dr. Elmore's report) are independently admissible under Fed.R.Evid. 803(6) as business records, his motion is odd and confusing. In any event, Defendant Banta's motion is, at bottom, an unsupported request that this Court reconsider part of its prior ruling and is therefore barred by the law of the case. Moreover, because Dr. Elmore's report is part of Mr. Earvin's overall medical records that are, in any event, independently admissible as business records under Rule 803(6), the government respectfully requests that Defendant Banta's motion be denied.

First, Defendant Banta's motion is barred by the law of the case doctrine. As the Supreme Court has stated: "A court has the power to revisit prior decisions of its own . . . in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citations omitted). Thus, "[u]nder the law of the case doctrine, a court generally should not reopen

issues decided in earlier stages of the same litigation." *United States v. Harris,* 531 F.3d 507, 513 (7th Cir. 2008). "[T]he doctrine authorizes such reconsideration of a previous ruling in the same litigation if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Id.* "[T]he law of the case doctrine is a discretionary doctrine that does not limit the district court's power to reopen what already has been decided." *Id.*

In this case, this Court, in rejecting Defendant Banta's prior motion in limine 5-1, credited Dr. Collier's testimony that "he based his conclusion that Earvin suffered from some type of mild shear injury or traumatic brain injury on Earvin's medical records, the results of the MRI, and his own observations[,]" [and that] "[t]he radiologist's [Dr. Elmore's] conclusions are consistent with Dr. Collier's opinion." (R.157 at 5) Thus, this Court held that there was "no basis to exclude Dr. Collier's testimony that Mr. Earvin suffered from a type of traumatic brain injury, such as shear injury, concussion or related injury." (R.157 at p.12) Despite this Court's ruling, Defendant Banta's motion in limine 8, now more than seven months later, is nothing more than a request that this Court revisit and limit part of that ruling as to the extent of Dr. Collier's testimony and the information on which he relied to base his opinion. Defendant Banta does not, however, provide any compelling reason for

the Court to do so or establish that the Court's prior ruling was clearly erroneous or that it would result in a manifest injustice. Thus, his motion should be barred under the law of the case doctrine. *See, e.g., United States v. Davis,* 2022 WL 279678, at \*\*3-5 (S.D. Ill. Jan. 22, 2022) (applying law of the case doctrine in denying defendant's motion to reconsider court's prior suppression ruling.).

Second, Mr. Earvin's medical records, including Dr. Elmore's report, are independently admissible under Fed.R.Evid. 803(6). That rule provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . .
>
> (6) Records of a Regularly Conducted Activity. A record of an act, event, *condition, opinion, or diagnosis* if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

>             (E) the opponent does not show that the source of
> information or the method or circumstances of preparation
> indicate a lack of trustworthiness.

Fed.R.Evid. 803(6) (emphasis added).

"Courts routinely admit medical records under Rule 803(6), which applies to business records." *LaBrec v. Wisconsin and Southern Railroad Co.,* 2019 WL 325131, at *2 (W.D. Wis. Jan. 25, 2019) (citing *Palafox v. Lucas*, 2017 WL 1197215, at *4 (S.D. Ill. Mar. 31, 2017); *Banks v. Almazar*, 2011 WL 1231142, at *7 (N.D. Ill. Mar. 30, 2011); *Arce v. Barnes*, 2015 WL 4599348, at *5 (S.D. Ind. July 29, 2015)); *see also Logan v. Westfield Ins. Co.*, 2020 WL 406785, at *3 (W.D. La. Jan. 24, 2020) ("[m]edical records are routinely admitted as evidence under the business records exception to the hearsay rule. Therefore, the medical records are admissible if it was kept in the course of regularly conducted business activity."); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) ("Rule 803(6) provides a hearsay exception for records kept in the course of any regularly conducted business activity, which would include hospitals."); *Stroud v. Roper Corp.*, 1990 WL 115610, at *1 (S.D.N.Y. Aug. 9, 1990) ("[i]t has long been settled law in the federal courts that notations made in hospital records regarding diagnosis and treatment, including notations regarding a patient's intoxication, are

admissible in evidence.").[2] To be admissible as business records, the medical records must meet the foundation requirements of Rule 803(6). *See, e.g., id.*

Here, the government has disclosed to Defendants Banta and Sheffler Mr. Earvin's medical records, including records from St. John's Hospital. The medical records are listed as Exhibits 21 – 25 on the government's amended exhibit list. (R.164) The St. John's medical records (Exhibit 21) include the government's Group Exhibit 2 that was admitted at the *Daubert* hearing, which, in turn, included Dr. Elmore's diagnosis that Mr. Earvin's "imaging [was] consistent with TBI." (*See* Government's *Daubert* hearing Group Ex. 2 at Bates No. 2534) The St. John's records also include the attached additional medical records, including Dr. Elmore's report, referencing that Mr. Earvin sustained a significant head injury, traumatic brain injury, and possible shear injury. (*See* attached Sealed Ex.)

---

[2] *See also* 5 Weinstein's Federal Evidence § 803.11[7][a] at 803-76 (2d ed. 1997) (footnotes omitted):

> No particular class of medical records is excluded from evidence. In addition to acts, events, and conditions, records of diagnoses and opinions are admissible, without restriction to "routine" matters or to physical (rather than psychiatric) concerns. However, the trial judge is authorized to exclude a particular record if indications of trustworthiness are shown to be lacking, either by the record itself, or by other evidence indicating that the opinion lacks factual basis or expert qualification. The other evidence may be supplied through the cross-examination of the custodian or other qualified witness, the calling and examination of the declarant physician or other hospital employee, or through the testimony of other witnesses.

In addition, the government has repeatedly advised Defendants Banta and Sheffler that the government intends to introduce the medical records under Rule 803(6) of the Federal Rules of Evidence as business records, either through a stipulation with the defendants, a business records certification, or through the testimony from a custodian of records. Because the medical records, including Dr. Elmore's report and all other medical records referencing a traumatic brain injury of Mr. Earvin, have been disclosed to the defendants and the government will establish their independent admissibility under Rule 803(6), which Defendant Banta does not dispute or acknowledge, Defendant Banta's motion in limine should be denied. *See* (authority cited above); *Whalley v. Blazick*, 2022 WL 304658, at *2 (M.D. Penn. Fed. 1, 2022) (pretrial ruling admitting medical record reflecting "notation of a traumatic brain injury" under Rule 803(6) by an examining doctor who was not going to be an expert witness at trial).

Finally, in the event Defendant Banta seeks leave of this Court to file a reply to this response and now challenge the admissibility and trustworthiness of the medical records under Rule 803(6), despite prior notice and an opportunity to do so, the government respectfully requests that the Court enforce the rule that arguments raised for the first time in a reply brief "are waived." *White v. United States*, 8 F.4th 547, 552 (7th

Cir. 2021) ("arguments raised for the first time in White's reply brief are waived because they leave no chance to respond.").

Third, the arguments in Defendant Banta's motion are, in any event, without merit. He contends, relying on *United States v. Lawson*, 653 F.2d 299 (7th Cir. 1981), that admission of Dr. Elmore's report implicates his constitutional right to cross-examine adverse witnesses. In *Lawson*, however, the Seventh Circuit affirmed the district court's allowance of testimony from the government's expert witness that his opinion was based on information from other non-testifying physicians. The Court held that the defendant had an "adequate opportunity to cross-examine the [government's expert] witness[,]" and that "his right to confront adverse witnesses was not violated." *Id.* at 301. The Court further held that in applying Fed.R.Evid. 703, which "expressly permits experts to base their testimony on evidence that would otherwise be inadmissible," courts must ensure that such evidence "is of a type reasonably relied on by experts in the particular field in forming opinions or inferences upon the subject[,]" and that "a criminal defendant must therefore also have access to the hearsay information relied upon by an expert witness." *Id.* at 302. The Court in *Lawson* held that the defendant "had sufficient access to the information" on which the government's expert witness relied "to reach his opinion." *Id.*

Here, as in *Lawson,* Defendants Banta and Sheffler have had complete notice of and access to the medical records, including Dr. Elmore's report, on which Dr. Collier partly based his opinion, and, as this Court previously held, Defendant Banta has had, and will have at trial, an opportunity to cross-examine and confront Dr. Collier. (R.157 at p.12) Defendant Banta's motion is thus merely an inappropriate attempt to restrict Dr. Collier's ability to explain his opinion on cross-examination. Further, this Court has previously held that Dr. Collier's testimony is admissible, and that he is competent to testify about Dr. Elmore's report as part of the basis for Dr. Collier's opinion. (R.157 at p.9) (quoting *Gayton v. McCoy,* 593 F.3d 610, 617 (7th Cir. 2010)). Thus, *Lawson* supports the admission of Mr. Earvin's medical records at trial. And, in any event, the medical records are independently admissible under Rule 803(6) and therefore are not hearsay evidence under Rule 703.

Defendant Banta further argues, citing several cases, that the government is attempting to use Dr. Collier as a mouthpiece for Dr. Elmore, without calling Dr. Elmore as a witness at trial, to bolster Dr. Collier's testimony. This argument is entirely inaccurate. Again, this Court has already credited Dr. Collier's testimony that "he based his conclusion that Earvin suffered from some type of mild shear injury or

traumatic brain injury on Earvin's medical records, the results of the MRI, and his own observations[,]" [and that] "[t]he radiologist's [Dr. Elmore's] conclusions are consistent with Dr. Collier's opinion." (R.157 at 5) This Court held that there was "no basis to exclude Dr. Collier's testimony that Mr. Earvin suffered from a type of traumatic brain injury, such as shear injury, concussion or related injury." (R.157 at p.12) Thus, there is also no basis to conclude that the government is using Dr. Collier as a mouthpiece for Dr. Elmore or that it is improperly attempting to bolster Dr. Collier's testimony. Moreover, none of the cases cited by Defendant Banta involve circumstances similar to Dr. Collier's testimony or this Court's prior holding, nor do they involve testimony concerning medical records (including Dr. Elmore's report) that are independently admissible as business records under Fed.R.Evid. 803(6).

Accordingly, the government respectfully requests that Defendant

Banta's motion in limine 8 be denied.

Respectfully submitted,

GREGORY K. HARRIS
UNITED STATES ATTORNEY

By:     *s/Timothy A. Bass*
        Timothy A. Bass, MO Bar No. 45344
        Assistant United States Attorney
        318 South Sixth Street
        Springfield, IL 62701
        Phone: (217) 492-4450
        tim.bass@usdoj.gov

        s/Eugene L. Miller
        Eugene L. Miller, Bar No. IL 6209521
        Assistant United States Attorney
        201 S. Vine St., Suite 226
        Urbana, IL 61802
        217/373-5875
        Fax: 217/373-5891
        eugene.miller@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to, and I emailed a copy of the Sealed Exhibit to, all counsel of record.

*s/Timothy A. Bass*
Timothy A. Bass, MO Bar No. 45344
Assistant United States Attorney
318 South Sixth Street
Springfield, IL 62701
Phone: (217) 492-4450
tim.bass@usdoj.gov